**In re HOSPITAL GENERAL SAN CARLOS, INC., Debtor–Appellee.**

**Civ. Nos. 86–1787 (RLA), 86–1788 (RLA).**

United States District Court, D. Puerto Rico.

March 17, 1988.

Benjamín Rodríquez Ramón, Hato Rey, P.R., for debtor-appellee.

Francisco A. Besosa, Hato Rey, P.R., for creditor-appellant.

## OPINION AND ORDER

ACOSTA, District Judge.

The present case is an appeal pursuant to 28 U.S.C. § 1334 from several Bankruptcy Court orders holding that debtor/appellee, Hospital San Carlos ("San Carlos"), could use certain payments made to the Puerto Rico Department of Labor to set off certain post bankruptcy petition taxes owed to creditor/appellant, the United States Internal Revenue Service ("the IRS").

The general issues on appeal are whether or not: (1) we have appellate jurisdiction over the present case; (2) the Bankruptcy Court erred in holding that San Carlos could set off payments made for unemployment taxes (pursuant to the Federal Unemployment Tax Act or "FUTA") (Claim No. 190 filed April 16, 1986); and (3) the Bankruptcy Court erred in confirming the debtor's plan of arrangement without first requiring debtor to deposit with the Court an amount sufficient to pay all post-petition administrative expenses.

For the reasons set forth below, we hold that we have appellate jurisdiction over the present case and consequently, we will deny San Carlos' motion to dismiss for lack of jurisdiction. In addition, after giving the disputed legal matters in this case a fresh evaluation and having reviewed the

Bankruptcy Court's factual finding under the "clearly erroneous" standard, *see* 1 *Collier on Bankruptcy* 3–183 (1987); Bankruptcy Rule 8013; *Rubenstein v. Ball Bros. Inc.*, 749 F.2d 1277 (9th Cir.1984), we conclude that the Bankruptcy Court did not commit any of the alleged errors and therefore we affirm the corresponding orders.

## BACKGROUND

This appeal is governed by the old Bankruptcy Act of 1898 ("The Act").

1. On October 8, 1976, San Carlos filed a petition for an arrangement with the creditors pursuant to Chapter 11 of the Act.

2. On November 16, 1981, the IRS and San Carlos entered into a written stipulation for the payment of certain federal taxes owed by San Carlos.

3. On or about March 4, 1986, the IRS, pursuant to Section 1112 of the Bankruptcy Code, moved the Bankruptcy Court to convert or dismiss San Carlos' case from a reorganization proceeding under Chapter 11 to a liquidation proceeding under Chapter 7. Essentially, the IRS wanted San Carlos declared a bankrupt for its failure to pay federal post-petition taxes on certain social security and unemployment obligations (Federal Insurance Contributions Act or "FICA" and Federal Unemployment Tax Act or "FUTA", respectively).

4. San Carlos opposed the IRS' motion arguing that its tax liability was substantially less than that claimed by the IRS. Its main argument was and still is that the IRS claim does not reflect credits for the payments made by San Carlos on account of the taxes and interest thereon to the Puerto Rico Department of Labor.

5. On or about April 16, 1986, the IRS amended its original claim against San Carlos by almost reducing in half the amount it had first requested from San Carlos.

6. Meanwhile, San Carlos, pursuant to Section 2(a) (2A) of the Act,[1] filed a "mo-

---

1. That Section gives the Bankruptcy Court authority to:

Hear and determine, or cause to be heard and determined, any question arising as to the amount or legality of any unpaid tax, whether

tion to determine tax liability" in an attempt to resolve the issue of the set-off and consequently the actual amount owed.

7. After conducting a hearing on the matter, on May 21, 1986, the Bankruptcy Court issued an order dated May 30, 1986 and filed or docketed on June 6, 1986. The order contained two holdings. The first was that Claim No. 190, the one asserted by the IRS for the alleged tax liabilities of San Carlos, was to be reduced in an amount that would reflect any payments of post-petition accrued interest. However, the Bankruptcy Court found that it did not have enough information to fix the actual amount of interest paid and therefore ordered the parties to resolve the issue among themselves and, if they could not, to request another hearing. This holding has not been appealed or opposed in any way by the IRS. Consequently, the reduction of the claim to include post-petition interest payments remains firm.

8. The second holding was that the credits sought by San Carlos for payments made to the Puerto Rico Department of Labor, *if proper*, were not barred by the time limitation provisions found in the Internal Revenue Code (26 U.S.C. § 6511(a); Treas.Reg. No. 301.6511(a)–(*l* )). Importantly, the Bankruptcy Court did not at this time determine the propriety of the individual credits nor their amount, if any. Rather, it specifically stated that

> As we are not presently in a position to determine the exact amounts of the credits applicable, we invite the parties to meet and resolve the arithmetical problems in accordance with this order; if such meeting does not result in an agreed set of numbers, the parties will be heard and the matter determined on July 16, 1986 at 2:00 p.m.

9. Apparently, the parties could not agree on the applicable credits thus prompting the scheduled July 16, 1986 hearing. As a result of that hearing, the Bankruptcy Court entered an order on August 8, 1986 wherein Claim No. 190 was allowed up to the amount of $87,858.01. According to the order, the IRS had agreed to accept the amount (presumably at the hearing though we have no other evidence of such agreement). The Bankruptcy Court disallowed the remainder of Claim No. 190, roughly $200,000. Though devoid of analysis the order states that the rulings are based upon the July 16th hearing and the order dated May 30.

10. On August 18, 1986 the IRS timely filed its notice of appeal of the August 8, 1986 order stating that the Bankruptcy Court's treatment of the credits and consequent allowance of only $87,858 as to Claim No. 190 was erroneous. It also raised a separate issue regarding the Bankruptcy Court's May 30, 1986 oral confirmation of San Carlos' plan of arrangement with creditors. (The *written* order and notice of confirmation were filed August 21, 1986.) The IRS argues that the confirmation order failed to comply with the Act and the Bankruptcy Rules because San Carlos had failed to deposit sufficient monies to fully pay the administrative expenses owed to the IRS. The timeliness of IRS' appeal on the issue of confirmation is not in question.

11. By order of this Court dated December 19, 1986 both appeals were consolidated given that, as the IRS itself states, the confirmation order would be improper only if the order as to Claim No. 190 was improper. The reason being that if the Bankruptcy Court correctly limited Claim No. 190 to $87,858 then San Carlos deposited sufficient monies; whereas if not, then San Carlos did not deposit enough money to cover the $200,000 sought by the IRS.

## ARGUMENTS

### A. *Appellate Jurisdiction*

In its motion to dismiss, and again in its brief on appeal, San Carlos argues that the

---

or not previously assessed, which has not prior to bankruptcy been contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction, and in respect to any tax, whether or not paid, when any such question has been contested and

adjudicated by a judicial or administrative tribunal of competent jurisdiction and the time for appeal or review has not expired, to authorize the receiver or the trustee to prosecute such appeal or review.

IRS's August 18, 1986 notice of appeal was untimely. San Carlos urges that we are currently faced with a disguised appeal of the Bankruptcy Court's May 30, 1986 order, which dealt with the larger issue of the credit allowances, and not with the August 8, 1986 order, which San Carlos characterizes as just "perfunctorily" determining the *amount* of credits allowed on May 30. In other words, San Carlos says that the IRS had to file its appeal ten days after the May 30th, not the August 8th, order for the credit allowance matter to be properly considered by this Court.

■ Our appellate jurisdiction is limited to timely appeals from final orders of the Bankruptcy Court.[2] The period to file a notice of appeal is ten days from the date of the entry of the appealed order. The ten-day term is jurisdictional: We have no jurisdiction over appeals filed after the appropriate period.

In the case at bar, the IRS met the jurisdictional period as to the August 8th order but not as to the May 30th order, the latter being clearly involved in this appeal. To the extent that the IRS's present consolidated appeal involves matters determined or adjudicated in the May 30th order, the threshold jurisdictional issue becomes whether or not that order was *final*. If it was final, this appeal must be dismissed insofar as it regards the credits issue.

San Carlos argues that the May 30th order was final because it "disposed of the whole subject of credits to which the Debtor was entitled." (Appellee's brief, at 10.) The IRS responds, in a curt footnote, that the May 30th order was not final and appealable solely because it "specifically omitted the exact amounts that would be allowed or disallowed on Claim No. 190" (Appellant's brief, at 6). Other than citing a case and questioning San Carlos' professional assessment of the present appeal, the IRS makes no attempt to discuss the issue. Moreover, it refused to file a brief

in opposition to San Carlos' motion to dismiss baldly asserting that the whole question of jurisdiction is frivolous. Yet no explanation was provided for this position. A quick reading of *Collier* would have enlightened the IRS that far from frivolous the question of appealability of bankruptcy orders is a difficult and relevant issue in this case. 1 *Collier on Bankruptcy,* paras. 3.03, 3–166 to 3–168 (15th Edition) ("In the specific context of bankruptcy cases, the courts have had a difficult time in determining what is a final order and what is an interlocutory order ... since the question arises in such a multitude of varied situations.")

Historically, the concept of finality of bankruptcy orders is more flexible in the bankruptcy context than in regular civil litigation. For example, bankruptcy proceedings are not subject to the "single judicial unit" rule applicable to most civil proceedings whereby only one appeal would lie in an entire proceeding. *In re Saco Local Development Corp.,* 711 F.2d 441, 444 (1st Cir.1983); *In re Empresas Noroeste, Inc.,* 806 F.2d 315, 316 (1st Cir.1986).

In accordance with this flexible approach, a bankruptcy order can be final and appealable when it conclusively determines a discrete dispute within a larger case. *In re Saco Local Development Corp.,* 711 F.2d at 444. San Carlos moves us to apply that concept to the present case and thus bar the IRS from ever raising the issue of the credits again. It argues that the Bankruptcy Court conclusively determined on May 30, 1986 that San Carlos could set off some of its tax liability with credits for payments made to the Puerto Rico Department of Labor; therefore, the May 30th order was final and the IRS's August 18th notice of appeal was untimely insofar as the appeal seeks to review the same issue of credits.

2. 28 U.S.C. § 158 states in pertinent part that: The district courts of the United States shall have jurisdiction to hear appeals from final ... orders....

Bankruptcy Rule 8002(a) states in pertinent part that:

The notice of appeal shall be filed with the clerk of the bankruptcy court within ten days of the date of the entry of judgment, order, or decree appealed from....

The problem here is evaluating whether or not the Bankruptcy Court did in fact *conclusively* determine the issue of credits when it stated on May 30 that it agreed with San Carlos' setoff argument and would allow some of the credits but did not determine the amount of said credits (and consequently the amount allowed on Claim No. 190) until August 8. The issue thus boils down to whether the *lack* of a determination of the *amount* of total credit made the May 30th order interlocutory or final. This is the element that San Carlos fails to address directly and that the IRS mentions only briefly.

The First Circuit Court of Appeals has held that "as long as an order allowing a claim or priority *effectively settles the amount due the creditor*, the order is 'final' even if the claim or priority may be reduced by other claims or priorities." *In re Saco Local Development Corp.*, 711 F.2d at 448. (Emphasis added.)

Moreover, where a "district court's order neither conclusively allows [a creditor's] claim against [the debtor] *nor determines what amount*, if any, [the debtor] may owe [the creditor]" then that order is not appealable as of right because it cannot be considered final. *Giles World Marketing, Inc. v. Boekamp Manufacturing, Inc.*, 787 F.2d 746, 748 (1st Cir.1986). In short, these opinions seem to hold that an order allowing a claim is final if the *amount* due the creditor has been determined even though the actual amount the creditor may eventually receive, once all related claims are determined, will be less or none.

These First Circuit interpretations of finality seem indistinguishable from ordinary non-bankruptcy cases where orders that merely determine liability without settling the amount of damages are generally regarded as interlocutory. *See, e.g., Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206, 47 L.Ed.2d 435 (1976); 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3915 at 592 (1976). Yet, following the practical and flexible approach to bankruptcy cases universally espoused by federal courts, a distinction or exception has been carved out by case law.

It is now established that whenever a bankruptcy court clearly settles a dispute between main parties, such as the allowance of a claim or the priority of a proof of claim, without determining the amount, if any, that the creditor is entitled to, that order will be final and appealable *only* if what remains to be done is purely a computational or ministerial task that does not significantly affect the bankruptcy court's adjudication of the parties' rights and liabilities. *In re Saco Local Development Corp.*, 711 F.2d 441 at 446; *Matter of Fox*, 762 F.2d 54, 55 (7th Cir.1985).

In the *Saco* case, the First Circuit classified as final an order which determined the right of a claimant to priority status but left undetermined how much of the claim would receive priority treatment leaving the claimant with nothing more to do than await *third party* litigation.

■ Recently, the *Saco* rule was distinguished, correctly we think, by the Seventh Circuit Court of Appeals. In *In re Goldblatt Bros., Inc.*, 758 F.2d 1248, 1251 (7th Cir.1985), the Seventh Circuit held that the *Saco* rule did not apply to cases where "the amount the claimant ultimately receives depends on further litigation between the parties to [the main] controversy." In other words, whenever the size of the claim depends on further agreement or litigation between the main parties and not on the outcome of third party litigation, then the order recognizing the claim does *not* become final until the *amount* of the claim is ultimately determined.

The Seventh Circuit interpretation brings the *Saco* rule more in line with its underlying rationale, i.e., that the tradition of liberally permitting the appeal of bankruptcy orders is promoted by reviewing only those orders that either leave the Court with simple ministerial accounting or the claimant with just the actual size of his allowed claim to be determined by derivative litigation. *In re Saco Local Development Corp.*, 711 F.2d 441, at 445, 447.

In sum, we have the following rationales for the finality rule developed in bankrupt-

cy proceedings. In general, from a practical perspective, bankruptcy proceedings typically involve discrete disputes that can be independently resolved and separately reviewed without generally affecting the progress of the particular bankruptcy proceeding. This avoids the waste of the parties' money and the court's resources that would otherwise occur if appeals had to await orders closing the entire bankruptcy proceedings. While Congress has historically placed great value on immediate appeals from bankruptcy orders, *see In re Saco Local Development Corp.*, 711 F.2d at 443–444, most of the case law, with the notable exception of Third Circuit opinions, has tended to temper such freestyle appealability in order to avoid piecemeal suits and unnecessary appellate litigation. *See In re Goldblatt Bros., Inc.*, 758 F.2d at 1250. The major concern has been to preserve the right to a quick appeal while ensuring that subsequent actions of either the district or bankruptcy courts will not moot the issue being appealed or raise new issues that should be considered with the original one. This is the age old problem of achieving speedy and just resolution of issues while maintaining acceptable and practical levels of judicial economy.

Implicit in the above rationales is the central notion that parties who feel aggrieved by bankruptcy court orders should not have to wait for review of their claims if they can demonstrate that these have been conclusively resolved by the Court and that no significant prejudice will result from an immediate appeal of the issue, even if other "ministerial" matters are still pending. In this vein, there appears to be some tension between the 10–day term to file a notice of appeal and the finality rule discussed above. That tension occurs when a party who has failed to understand the final nature of an order allowing a claim waits to file its notice of appeal until after the amount of that claim is decided and that particular determination is made on a date beyond the 10–day term of the "first" order.

The problem that arises in such a situation is that a party may be precluded from appealing an otherwise reviewable issue simply because the bankruptcy court, as in the present case, never made it patently clear that the matter, though lacking a finite valorization in monetary terms, was nonetheless final for purposes of appeal. Given the widely recognized difficulty federal courts have had in discerning between final and interlocutory appeals, and the rationale behind the finality rule of permitting quick and discrete appeals, it would seem unfair and impractical under the circumstances of this case to rigidly apply the finality rule vis-á-vis the 10–day term in such a way as to categorically prohibit review of an otherwise appealable issue.

In most, if not all, the cases discussed above (and the relevant ones cited by movant in the case at bar) where the courts have found that they lack appellate jurisdiction they have done so under the premise that the controversy was not, in a sense, "ripe" for review given that the order appealed from was not final. In so doing, these courts simply postponed the issue for another day, unless of course the putative appellant decided not to pursue its appeal at that future time. These courts did not, as movant would have us do here, preclude the appeal altogether.

More importantly, however, is knowing how to fit the 10–day term within the finality principle. To this end, we ask: If it is widely recognized that courts have a difficult time discerning between final and interlocutory orders, how much easier is it for litigants to do the same? Would it not undermine the efficiency rationale for the finality principle so well discussed in *Saco* to have litigants file appeals, for fear of losing their rights under the 10–day term, every time they *think* a discrete issue has been conclusively decided by the court. Clearly, the onus should be on bankruptcy courts to express that an order is in fact final and thus subject to review thereby prompting the aggrieved party to file the corresponding appeal if it so wishes. Such expression would of course be subject to the district courts' interpretation given that they, and not the bankruptcy courts, have the power to determine their appellate jurisdiction. Still, however, an express deter-

mination by the bankruptcy court that the claim has been finally resolved though some computational matters remain would undoubtedly aid the district court in its jurisdictional determination. Admittedly, this is not a significant problem in most cases, but it can be one, as it is here, where the issue of finality is not so clear because the controversy has not been fully settled insofar as the amount is left to be determined.

It is under these specific circumstances that we see the tension between the 10–day rule and *Saco* type liberal appealability which to our minds should raise a presumption of appealability in favor of appellant.

■ For these somewhat equitable and practical considerations, we hold that in the present case the Bankruptcy Court's May 30th order was not final and thus the IRS's present appeal of that order is timely.

### B. *The Setoff of Claim No. 190*

The second and main issue in this appeal is whether or not the Bankruptcy Court erred in setting off or deducting from the IRS's Claim 190 (against San Carlos) certain tax payments San Carlos made to the Puerto Rico Department of Labor.

The IRS assigns two errors to the Bankruptcy Court in this specific matter. First, that the Bankruptcy Court erroneously allowed San Carlos to set off FUTA taxes against FICA liabilities, i.e., that San Carlos was allowed to use credits for FUTA payments to reduce FICA liabilities it had not completely paid. The IRS's argument seems to be that only FICA taxes can set off FICA liabilities. We will not, however, decide this issue since the IRS all but abandoned it. It dedicates barely three sentences in its entire brief to the issue, to wit: "By allowing Claim 190 only in that amount, the Bankruptcy Court set off FUTA taxes against FICA liabilities. Allowing this setoff was contrary to law." [3] (Appellant's brief at 7). How it was con-

trary to law we are left to guess. Since appellant completely failed to support its argument with any law, its appeal of the issue can only be considered frivolous and without merit, and this will be the extent of our consideration of that issue.

The second error under the above subheading argued by the IRS is that most of the tax credits allowed by the Bankruptcy Court were barred by statute of limitations provisions in the Tax Code and Treasury regulations.

Section 3301 of the Internal Revenue Code of 1954, as amended (26 U.S.C.) ("Tax Code"), imposes a federal unemployment tax on the compensation paid by an employer (such as San Carlos) to its employees. This tax is commonly referred to as the FUTA tax. The Code permits an employer to receive a credit against its federal FUTA tax liability for payments made to a state unemployment insurance fund. Section 3302(a)(2) of the Code states: "[T]he credit shall be permitted against the tax for the taxable year only for the amount of the contributions paid with respect to such taxable year."

In addition, Treasury regulations implementing Section 3302 provide that "[i]n order to be allowable as credit against the tax for any taxable year the contributions must have been paid with respect to such year." 26 C.F.R. Sec. 31.3302(b). Thus the Code and the regulations make clear that taxes paid in a given year can only apply to the tax liabilities of that particular year.

In addition, the actual amount of the credit, if any, usually depends on the timing of the payment. Treasury regulation Section 31.3302(a)—1(c)(1) provides that "no refund or credit by the tax based on credit for contributions paid will be allowed unless the contributions are paid prior to the expiration of the period of limitations applicable to refund or credit of the tax."

The limitations period applicable to credits or refunds of tax paid is prescribed in

---

**3.** In the next paragraph the IRS again states that "[the] credit however is allowable only against the FUTA tax not other types of taxes." And again fails to cite any law to that effect except for 26 U.S.C. § 3302(a)(2) which we view as a non sequitur since that section speaks only to the timing of payments vis-á-vis credits (which is precisely the IRS' main argument) and not about the crossover of credits of different types of taxes.

Code Section 6511, and in Treasury regulation Section 301.6511(a)(1).

Those provisions generally state that a claim for refund or credit must be filed within three years of the time the original return was filed or within two years of the date the tax was paid, whichever period expires later.

Given these provisions, the IRS says that insofar as San Carlos is asking for a credit for FUTA taxes paid, it should have filed a formal claim for such within the time limitations found in the Code and Treasury regulations. Therefore, says the IRS, since the record does not reflect that any such formal claim was timely made, San Carlos is barred from seeking those credits now and the Bankruptcy Court erred in allowing them.

The Bankruptcy Court was aware of these Tax Code provisions and did not dispute them. Instead, it expressly found them inapplicable to the present case primarily because of a stipulation achieved by the parties but also because it found the equitable principles underlying the bankruptcy process so compelling as to displace the time limitations found in the Tax Code in circumstances such as the ones found in this case.

Specifically, the Bankruptcy Court found that:

We do not have ... the case before us of payments made outside of bankruptcy, but rather the case of payments made pursuant to a stipulation filed with and approved by this court during the reorganization period of a Chapter XI debtor whose reorganization is yet before this court; under these circumstances we understand the non-bankruptcy rules on credits are not appropriate.

[T]he IRS's position if carried to its extreme would imply that we could not consider an objection to claim [No. 190] of the type presented by debtor; or that although paid in full or in part, we would be required to pay it again because an application for credit for the double or over-payment was not timely presented. The payment of monies to the IRS was not purely a matter of the debtor and the IRS. All of debtor's creditors were affected.... The nature of the proceeding requires that finality of such matters cannot depend upon a statute or regulation designed to control the relations exclusively between a tax payer and the state. Rehabilitation under the bankruptcy process is an exercise of equity; equity requires us to balance accounts between debtors and creditors and to do a variety of things to insure that all creditors are treated equitably....

■ After reviewing the record *de novo*, we find ourselves in agreement with Judge Beckerleg of the Bankruptcy Court. We do so not with any categorical disregard for the limitations period in Section 6511 of the Tax Code, but rather with the simple intention of wedding the equitable principles of bankruptcy and taxation limitations to the particular facts of this case (which includes a court-sanctioned stipulation among the parties). In other words, we do not hold that the Bankruptcy Code displaces the Tax Code, rather we agree with Judge Beckerleg's concern for the equities of this case and we adopt his reliance of the several arrangements made between the parties in holding that the Bankruptcy Court was correct to apply the credits in question even though San Carlos did not formally claim such credits in a timely manner. We feel this holding best harmonizes the two codes to the peculiar facts of this case.

The explicit provisions of the two codes in question, i.e., the Bankruptcy Act ("the Act") and the Tax Code, seem contradictory insofar as the Tax Code imposes a two-year limit on claims for tax credits whereas the Act speaks of the suspension of all statutes of limitations in cases of mutual debts until two years after the debtor has been adjudicated bankrupt, or the case dismissed, and a trustee appointed,[4] which has not oc-

---

4. For the text of this provision and a discussion of other pertinent sections of the Bankruptcy Act *see infra* pages 878–879.

curred in the present case. We find that in the case at bar the rehabilitation principles of the bankruptcy process would be seriously undermined were we to permit credits validly due to the debtor herein to be lost simply because the debtor, possibly under the assumption that a stipulation between the parties had suspended the applicable statute of limitations anyway, did not file for a refund on time. This would be a detriment not only to the debtor but to all his creditors (other than the IRS). In contrast, the finality and other administrative principles underlying the two-year limitation period in the Tax Code are not seriously hurt, if at all, by the Bankruptcy Court ruling. The IRS argues that this reading of the two statutes will create a safehaven for debtors. But that is not the case here, where the over-payments were made by San Carlos and "owed" by the IRS just prior to San Carlos falling behind on payment of its tax liabilities, among others, and filing for reorganization. In short, the credits here are obviously for money overpaid by San Carlos and to deny it those credits is to force a form of double payment that seems wholly unfair in light of the principal Chapter 7 rationale that a debtor should be able to bootstrap itself back to a productive existence and all creditors, including the IRS, are to be treated equitably within the priorities established by law.

That the Bankruptcy Act seeks to provide debtors with a respite from the type of limitations sought to be imposed in the present case by the IRS can be gleaned from three basic provisions.

Section 11(e) of the Bankruptcy Act states:

A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy. Where, by any agreement, a period of limitation is fixed for instituting a suit or proceeding upon any claim, or for presenting or filing any claim, proof of claim, proof of loss, demand, notice, or the like, or where in any proceeding, judicial or otherwise, a period of limitation is fixed, either in such proceeding or by applicable Federal or State law, for taking any action, filing any claim or pleading, or doing any act, and where in any such case such period had not expired at the date of the filing of the petition in bankruptcy, the receiver or trustee of the bankrupt may, for the benefit of the estate, take any such action or do any such act, required of or permitted to the bankrupt, within a period of sixty days subsequent to the date of adjudication or within such further period as may be permitted by the agreement or in the proceeding or by applicable Federal or State law as the case may be.

Section 342 of the Bankruptcy Act indicates that:

Where no receiver or trustee is appointed, the debtor shall continue in possession of his property and shall have all the title and exercise all the powers of a trustee appointed under this Act, subject, however, at all times to the control of the court and to such limitations, restrictions, terms, and conditions as the court may from time to time prescribe.

On the other hand, Section 391 of the Bankruptcy Act states:

All statutes of limitation affecting claims provable under this Chapter and the running of all periods of time prescribed by this Act in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended while a proceeding under this chapter is pending and until it is finally dismissed.

Debtor is also entitled to the credit in question pursuant to Section 68 of the Act which provides that:

a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the account shall be stated and one debt shall be set off

against the other, and the balance only shall be allowed or paid.

Although it can be argued that none of these provisions by themselves fit the facts of this case like a glove, they nonetheless collectively underscore one central notion of bankruptcy proceedings. That is that most statutes of limitations should be suspended during the interval from the filing of the Chapter 11 petition until two years after the adjudication of the debtor in bankruptcy (or until the case is otherwise dismissed). *See generally Liman v. Bank of Nova Scotia,* 337 F.Supp. 62 (S.D.N.Y. 1971) (2–year statute of limitations suspended during pendency of Chapter 11 proceedings).

In addition, Section 11(e) speaks of setting periods of limitations by "agreement" and it is at least a colorable argument that such an agreement was embodied in the stipulation filed by the parties.

The parties' stipulation of November 16, 1981 (which the IRS conveniently fails to mention in its argument on appeal) for the payment of federal taxes stated, at paragraph 5, that "all statute of limitations on the collection of federal taxes plus statutory additions thereon for the years and periods involved therein *are suspended* during the pendency of this proceeding and for as long as any part of the aforementioned federal taxes plus statutory additions thereon remain unpaid, and for one year thereafter." (Emphasis added.) Although the IRS argues that this provision was "clearly" intended only for its benefit and not that of the debtor, our reading of it sees nothing clear. It is open to different interpretations, and we will give debtor the benefit of the doubt.

Moreover, in paragraph 11 of the same stipulation the parties agreed that:

> Any *refunds or credits to which the debtor may become entitled* at any time before the federal taxes, plus statutory additions thereon provided for herein, have (sic) been fully satisfied, *may be credited administratively* against the said federal taxes and additions. In the event any refund check or checks are received by the debtor prior to the full satisfaction of the federal taxes, plus statutory additions thereon provided for herein such check or checks shall be immediately endorsed and delivered to the Director for application against the said federal taxes and additions. (Emphasis added.)

San Carlos argues, and the Bankruptcy Court apparently agreed, that the very language of paragraph 11 triggers the provisions of Section 68(a) regarding the setoff of claims vis-á-vis mutual debts.

The IRS, on the other hand, not only disputes that a mutual debt existed but argues that Section 68(a) is triggered only when the limitations period of Section 6511(a) of the Tax Code has been met because Section 68(a) speaks of credits to which the debtor "may be entitled." And here, says the IRS, San Carlos is not entitled to anything because it didn't file a claim for refund. We believe, however, that San Carlos may not have done so believing not only that all statutes of limitations were automatically suspended by virtue of the Bankruptcy Act but also that it had worked out an agreement with the IRS that took into full account the matter of the credits and at least implicitly validated the same despite their noncompliance with Section 6511. Therefore, we conclude that in the very specific context of this case, and given the long standing relationship and arrangements made between the parties to this suit, that the Bankruptcy Court was correct in allowing the credits in question. We are convinced that this holding equitably protected the debtor and *all* its creditors, and the IRS has gotten its due as well.

### C. *The Confirmation Order and the Deposit of Monies*

Our last issue is our simplest primarily because it has been effectively mooted by our holding on the previous issue, i.e., that the credits were properly allowed. The IRS alleges that the Bankruptcy Court erred in confirming the debtor's plan of arrangement (also known as the plan of reorganization) when the debtor had not deposited enough monies with the Court, prior to confirmation, to pay all administra-

tive claims, including post-petition taxes as required by Bankruptcy Rule 11–38(a) and Section 361 of the Bankruptcy Act.[5]

Debtor had deposited over $227,000 with the Court prior to confirmation but the IRS was seeking over $337,000 in taxes. Although a careful reading of the transcript shows that San Carlos was unable to post the full amount of money and that the Bankruptcy Court was sufficiently concerned with that problem to adjudicate from the bench the concomitant issue of the credits (see Transcript of May 30, 1986 proceedings pp. 23–25, 27, 36, 39–45), we need not delve into the intricacies of the record and the law since the issue is now moot. As the IRS itself acknowledged on its motion to consolidate the appeals in the instant case:

> The United States admits that should the Bankruptcy Court's determination on the first appeal be sustained, that this second issue will have become moot; we admit that sufficient monies were deposited by the debtor with the Bankruptcy Court, prior to confirmation, to pay those taxes which the Bankruptcy Court had determined were due and owing due to its earlier determination that 26 U.S.C. Section 6511 did not apply to this action.

We need go no further. The judgment of the Bankruptcy Court is affirmed in all respects.

### CONCLUSION

In accordance with the above, debtor appellee's Motion to Dismiss for lack of jurisdiction is DENIED and the judgment of the Bankruptcy Court is AFFIRMED. Judgment shall be entered accordingly.

IT IS SO ORDERED.

---

**5.** This issue constitutes a second appeal brought by the IRS but the same was consolidated with the first appeal by order of this Court.