[No. 5593–1. Division One. July 31, 1978.]

ROBERT J. CHENEY, JR., ET AL, *Respondents,* v. THE CITY OF MOUNTLAKE TERRACE, ET AL, *Appellants.*

LOUIS MAICHEL, ET AL, *Respondents,* v. THE CITY OF MOUNTLAKE TERRACE, *Appellant.*

*Adair, Kasperson, Petersen & Hennessey* and *William F. Hennessey,* for appellants.

*J. Richard Aramburu,* for respondents.

ROE, J.—Defendant City proposed to build a road adjacent to plaintiffs' property. In November 1974, plaintiffs

sued both the City and the Urban Arterial Board (UAB); they sought a declaration that the defendants' proposed action violated the State Environmental Protection Act (SEPA), and also sought an injunction until the act was complied with. No temporary restraining order was issued at that time. In March 1975, the City let the contract to construct the road, and construction started. Plaintiffs then brought a second action, alleging the road project was a nuisance, and sought abatement or damages in the event it wasn't abated. The two cases filed by the plaintiffs were consolidated and a temporary restraining order was entered. Hearing on the merits was accelerated. The temporary restraining order was dissolved after 40 days. As provided by RCW 7.40.080[1] and CR 65(c),[2] a total bond amounting to $10,000 was posted as a condition of obtaining the temporary order. Construction of the road, of course, was stopped. Before work could resume, the labor cost increased by approximately 10 percent because of the implementation of an industry–wide collective bargaining agreement. The defendant City negotiated a settlement with the contractor after the work was finally completed in

---

[1]RCW 7.40.080 states as follows:

"No injunction or restraining order shall be granted until the party asking it shall enter into a bond, in such a sum as shall be fixed by the court or judge granting the order, with surety to the satisfaction of the clerk of the superior court, to the adverse party affected thereby, conditioned to pay all damages and costs which may accrue by reason of the injunction or restraining order. The sureties shall, if required by the clerk, justify as provided by law, and until they so justify, the clerk shall be responsible for their sufficiency."

[2]CR 65(c) states as follows:

"(c) **Security.** Except where the court in issuing orders pursuant to Laws of 1973, 1st Ex. Sess., ch. 157 directs otherwise, no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained. No such security shall be required of the United States or of an officer or agency thereof. Pursuant to RCW 4.92.080 no security shall be required of the State of Washington, municipal corporations or political subdivisions of the State of Washington.

"The provisions of Rule 65.1 apply to a surety upon a bond or undertaking under this rule."

respect to his increased costs. Plaintiffs were not advised of the negotiations looking to settlement. A change order was negotiated, the net effect of which was to allow the general contractor the sum of $10,693.24 over and above the contract price, it being agreed between the City and the contractor that the delay occasioned by the temporary injunction had increased the contractor's costs by that amount without fault on his part. The City then moved for judgment in the full amount of the bond alleging damages due to delay in the above amount, and requested attorney's fees of $4,389 at trial and $1,713.25 on appeal. At a trial upon the City's motion, the court found that the damage caused by the issuance of the injunction was $6,220.84. The trial court, of course, found that there was no fault on the part of the contracting company for the delay. Nevertheless, the trial court denied the City's claim to any principal sums whatever for reasons which will be discussed below. The trial court did allow $721.87 as attorney's fees, holding such sum reasonable for the attorney's time spent defending only the motion for a temporary injunction. On this appeal the City seeks the full amount of its damages which the trial court found to be reasonable, plus the attorney's fees.

The purpose of the injunction bond is to insure that the adverse party affected thereby will be able to recover all damages and costs which might accrue "by reason of" the injunction or the restraining order, and that the fund shall be readily available. A temporary injunction is usually issued ex parte; it can be an instrument of oppression and can have greatly adverse effects on the person restrained. Thus the statute and rule require that the person who suffers thereby must have some reasonable measure of satisfaction if it be later determined that he was the innocent victim of the order. In fact, it is error to grant the injunction without the required bond. *See Irwin v. Estes*, 77 Wn.2d 285, 461 P.2d 875 (1969).

In denying damages, the trial court found in effect that the City was a volunteer in making payment, and was not

required to do so under the contract. Plaintiff relies.on the familiar "no pay for delay" clause found in many construction contracts. The Washington interpretation of this rule has been discussed in many cases, one of the latter being *Nelse Mortensen & Co. v. Group Health Cooperative,* 17 Wn. App. 703, 713, 566 P.2d 560 (1977), *review granted,* 89 Wn.2d 1019 (1978). In the case at bench the provisions relating to possible claims for suspension of work by the City are found in section 8.03 of the standard specifications, which reads as follows:

> When, in the judgment of the *Engineer* unfavorable weather makes it impractical to secure first class results, or other conditions warrant the granting of a suspense order, he shall issue to the Contractor a written order to suspend work wholly or on any part of the contract.

(Italics ours.) The clause further provides that when conditions are again "favorable" for the prosecution of the work, the *engineer* shall issue a new order. Suspension of the work by the engineer shall not furnish any grounds for claims by the contractor for damages or extra compensation, but the period of such suspension shall be taken into consideration in determining the revised date for completion. Thus the contractor avoids the running of the penalty clause for the number of days by which the work is suspended but receives no extra compensation. That provision would be subject to reasonable interpretation, and certainly the engineer could not arbitrarily suspend the work unless there was unfavorable weather making it impractical to secure first–class results, or other conditions which would warrant the granting of a suspense order. Such a suspension depends upon the engineer's judgment. The suspension in the instant case was because of a court order; the engineer's judgment had nothing to do with it since he wasn't called upon to exercise any judgment. We observe also that no showing was made of "unfavorable weather . . . or other conditions" which would warrant the engineer's suspense order, nor does the record show that the engineer ever made any judgment to close down the work. The engineer

was helpless to continue had he wished to do so. His judgment, if any, was irrelevant. Those phrases would refer to the conditions on the job, not to a court order.

Since that provision applies to "favorable" and "unfavorable" conditions, and also requires a judgment by the engineer, none of which occurred here, we believe that the clause does not apply, and affords the City no defense.

RCW 60.28.080[3] addresses itself to the problem in this case. It provides that if a public construction contract be delayed by a preliminary restraining order issued pursuant to litigation, the appropriate public contracting body may wish to delete the completion of (terminate) the contract if allowed by RCW 60.28.010(3), or order the funds retained under RCW 60.28.010(1) paid to the contractor under RCW 60.28.070. However, if the public body elects to do neither, then it must issue a change order or force account directive

---

[3]RCW 60.28.080 states:

"(1) If any delay in issuance of notice to proceed or in construction following an award of any public construction contract is primarily caused by acts or omissions of persons or agencies other than the contractor and a preliminary, special or permanent restraining order of a court of competent jurisdiction is issued pursuant to litigation and the appropriate public contracting body does not elect to delete the completion of the contract or order funds reserved paid to the contractor as provided by RCW 60.28.010(3) and 60.28.070 respectively, the appropriate contracting body will issue a change order or force account directive to cover reasonable costs incurred by the contractor as a result of such delay. These costs shall include but not be limited to contractor's costs for wages, labor costs other than wages, wage taxes, materials, equipment rentals, insurance, bonds, professional fees, and subcontracts, attributable to such delay plus a reasonable sum for overhead and profit.

"In the event of a dispute between the contracting body and the contractor, arbitration procedures may be commenced under the applicable terms of the construction contract, or, if the contract contains no such provision for arbitration, under the then obtaining rules of the American Arbitration Association.

"If the delay caused by litigation exceeds six months, the contractor may then elect to terminate the contract and to delete the completion of the contract and receive payment in proportion to the amount of the work completed plus the cost of the delay. Amounts retained and accumulated under RCW 60.28.010 shall be held for a period of thirty days following the election of the contractor to terminate. Election not to terminate the contract by the contractor shall not affect the accumulation of costs incurred as a result of the delay provided above.

"(2) This section shall not apply to any contract awarded pursuant to an invitation for bid issued on or before July 16, 1973."

to cover the contractor's reasonable costs incurred as a result of such delay. These costs shall include, but are not limited to, contractor's costs for wages, labor costs other than wages, wage taxes, materials, equipment rentals, insurance, etc., plus a reasonable sum for overhead and profit. If the delay exceeds 6 months, the contractor may elect to terminate the contract. If a dispute arises between the contractor and the public body, then arbitration procedures may be commenced, but should the *contractor* elect not to terminate the contract, that "shall not affect accumulation of costs incurred as a result of the delay provided above." RCW 60.28.010(3).[4]

The City could not elect to terminate the contract under RCW 60.28.010(3) because that section and RCW 60.28.070 are mutually exclusive, and the latter applies here. Section 9.05 of the contract allows the City to pay the retainage, under RCW 60.28.070, but only after the contractor requests it. This contractual limitation of the City's option means that the contractor must agree before the City could pay the retainage and escape all further liability. Obviously no statute could require the contractor to agree to this because that would be a law impairing the contract. There was no showing that the contractor in this case agreed to terminate the work, and he would have been unlikely to do

---

[4]RCW 60.28.010(3) states as follows:

"(3) If the public body administering a contract, other than a contract governed by the provisions of RCW 60.28.070, as amended, after a substantial portion of the work has been completed, finds that an unreasonable delay will occur in the completion of the remaining portion of the contract for any reason not the result of a breach thereof, it may, if the contractor agrees, delete from the contract the remaining work and accept as final the improvement at the stage of completion then attained and make payment in proportion to the amount of the work accomplished and in such case any amounts retained and accumulated under this section shall be held for a period of thirty days following such acceptance. In the event that the work shall have been terminated before final completion as provided in this section, the public body may thereafter enter into a new contract with the same contractor to perform the remaining work or improvement for an amount equal to or less than the cost of the remaining work as was provided for in the original contract without advertisement or bid. The provisions of this chapter 60.28 RCW shall be deemed exclusive and shall supersede all provisions and regulations in conflict herewith."

so. Nor was there a showing that the contract was so substantially completed that the contractor would then desire to be terminated, or that he would deliver, as required by the statute, sufficient bond, in the amount of reserved funds, to cover any possible claims. Finally, there was also no showing that it would "work undue hardship on the contractor" if the City did not pay the retainage, but RCW 60.28.070 requires such a determination. In fact, the work had just begun.

The trial court found, under the terms of RCW 60.28.080, that in the event of an injunction on this UAB project, the City had an election either to pay out the retained percentage under the terms of RCW 60.28.070, or to issue a change order to cover reasonable costs. However, the first option was not available because there was no agreement by the contractor. In any event, the statute gave the City an option. The City chose to complete this contract and not to terminate it; hence, the City had the authority under the statute to issue a change order to cover the increased costs mentioned. Since the City didn't terminate, and since it wasn't required to do so even if it could have, it is entitled to recoup the reasonable damages which the trial court found it suffered by reason of the temporary restraining order.

More importantly, the parties seem to have argued on the assumption that the City had possible recourse to this bond only in relation to the instant contractor. The bond was to cover the City for "all damages" that it might suffer, without restriction. Had it terminated the contract, it would still have been entitled, after the injunction was lifted, to negotiate a new contract to complete the project. The additional costs which the court found to be reasonable presumably would have characterized a new contract with a new contractor; thus the damages the City would have sustained, from the delay in negotiating a more expensive contract and the other items mentioned, would have been at least equal to, if not more than, that which the contractor on the job had already sustained. The bond for recovery is

not limited to the instant contract; it is for the benefit of the defendant, for all damages it might suffer because of the delay. If work had been delayed 2 years, by trials and appeals, still the bond would be liable for the added costs. The costs suffered here have been found to be reasonable.

■ The trial court attached considerable significance to the fact that the City did not invite the plaintiffs to participate in negotiations with the general contractor when the time came for settlement of the account. The court held[5] that before the City could make the election specified in the statute, and thereby establish the plaintiffs' liability, the City must have given the plaintiffs notice and an opportunity to make their views known so they could minimize whatever damages or preserve their legal rights. Plaintiffs contend that in this indemnity proceeding certain preconditions must be met before the indemnitor becomes liable to indemnify the indemnitee. The general rules in these situations are set out in *Nelson v. Sponberg,* 51 Wn.2d 371, 376, 318 P.2d 951 (1957):

> Washington is with the majority of courts which hold that an indemnitee who seeks reimbursement from his indemnitor for a payment made by him in discharge of a claim indemnified against is not bound to submit to suit before paying the claim; but if he pays without such suit, as a condition of recovery from his indemnitor, he is under the necessity of proving that he was liable for the amount thus paid.

(Citations omitted.) Furthermore, even though the liability of the indemnitee has been determined in a suit against him by the claimant, unless the responsibility of the indemnitor was at issue in that suit and the indemnitor was given notice in a subsequent suit, the indemnitee still must

---

[5]Conclusion of law No. 4 reads as follows:

"4. Before the City could make the election specified in RCW 60.28.080 and thereby establishing [*sic*] possible liability of plaintiffs on the injunction bond, the City must give the plaintiffs notice or opportunity to make their views known or take whatever action they deemed appropriate to preserve their legal rights. Since the City failed to give such notice, it may not recover on the bond for money paid pursuant to the election."

show that the indemnitor's acts caused the damage. Under the Washington rule the indemnitee must show that the indemnitor is obligated to indemnify, and further that the indemnitee was legally liable to pay the claim. This does not require that the indemnitee notify the indemnitor, or that the latter be a party to settlement negotiations. If the indemnitee pays, he may pay at his peril because he still must prove both that he was legally obliged to pay and that the amount paid was reasonable. This has been satisfied here because the trial court found the City liable to the contractor, albeit in a reduced amount, and found that such amount was reasonable.

■ We now come to the question of attorney's fees. Both parties complain of the trial court's ruling, the plaintiffs having cross–appealed from the amount allowed against the bond.

> If injunctive relief is the *sole* purpose of the suit, and a temporary injunction has issued upon notice and hearing pending trial on the merits, counsel fees are recoverable as damages resulting from the temporary injunction if the injunction be dissolved at trial. But, where injunctive relief is not the sole purpose of the suit and only incidental or ancillary thereto, counsel fees as damages are recoverable only for services reasonably performed in attempting to quash the temporary injunction and not for professional services rendered in the trial on the merits.

(Italics ours.) *Cecil v. Dominy,* 69 Wn.2d 289, 293–94, 418 P.2d 233 (1966). This was the rule applied by the trial court, and in this case we think it was correct.

Two suits were brought in this case and consolidated for one hearing. The first action alleged violation of SEPA regulations, but did not seek an immediate restraining order. The second action sought abatement or damages for nuisance. The trial court found, since the suit under SEPA

> was not to obtain judgment forever enjoining the construction, but simply to enjoin it until the alleged noncompliance with SEPA was cured,

that the "injunction was not the sole relief sought." There was no breakdown of the City's reasonable attorney's fees as related to the two cases; thus, the trial court, referring to the principles of *Cecil v. Dominy, supra,* awarded $721, the City's attorney's fee for defending against the temporary injunction.

That injunction was quickly dissolved, and in fact on the appeal this action became one for a permanent injunction. Had the plaintiffs prevailed in that, of course, no attorney's fees would have been allowed; it is also doubtful whether the plaintiffs would have been granted attorney's fees. The Supreme Court has indicated that prevailing litigants in environmental litigation generally are not entitled to attorney's fees. *Swift v. Island County,* 87 Wn.2d 348, 552 P.2d 175 (1976); *PUD 1 v. Kottsick,* 86 Wn.2d 388, 545 P.2d 1 (1976).

The plaintiffs argue that since injunctive relief was not the sole purpose of the suit, it was error to allow any attorney's fees. We believe the court correctly applied the rule. The City may recover its attorney's fees for attempting to quash the temporary injunction; but it may not recover its fees incurred at the trial on the merits. *Cecil v. Dominy, supra.*

The trial court is reversed as to the amount of damages but is affirmed as to the attorney's fees.

FARRIS, C.J., and WILLIAMS, J., concur.

Reconsideration denied October 17, 1978.