749 F.2d 1277
 In re NEW ENGLAND FISH COMPANY, a Maine corporation, also
known as NEFCO, Debtor.
Sam RUBENSTEIN, Trustee of New England Fish Company, a Maine
corporation, also known as NEFCO, Plaintiff-Appellant,
v.
BALL BROS., INC., an Alaska corporation, Defendant,
and
Seafood Processing Company, a Washington corporation, et
al., Defendants-Appellees.
 No. 83-4294.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 3, 1984.
Decided Oct. 19, 1984.
As Amended Dec. 26, 1984.
 
 Ronald T. Schaps, Bogle & Gates, Seattle, Wash., for Rubenstein.
 Charles C. Gordon, Perkins, Coie, Stone, Olsen, & Williams, Matthew R. Kenney, Lane, Powell, Moss & Miller, Michael F. Rodin, Preston, Thorgrimson, Ellis, & Holman, James A. Grutz, Goodwin, Grutz & Scott, Seattle, Wash., Wayne Anthony Ross, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before SKOPIL and NELSON, Circuit Judges, and COYLE,* District Judge.
 NELSON, Circuit Judge.
 
 
 1
 Rubenstein, bankruptcy trustee for the New England Fish Co., appeals the district court's grant of summary judgment dismissing his negligence, third party beneficiary contract, equitable subrogation, and equitable indemnity claims against appellees. Rubenstein's claims arose from the appellees' alleged negligent processing of fish sold by the New England Fish Co. to a Japanese corporation.
 
 
 2
 We affirm the district court's summary judgment dismissing the negligence, third party beneficiary contract, equitable subrogation, and equitable indemnity claims.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 The New England Fish Company (NEFCO), a Maine corporation with its principal place of business in Washington, was in the business of acquiring and selling seafood. On April 9, 1979, NEFCO entered into an agreement with Okaya, Inc., a Japanese corporation, to sell Okaya an estimated 4,550,000 pounds of frozen salmon.
 
 
 4
 Ball Bros., Inc., an Alaska corporation, was in the business of purchasing salmon caught in Bristol Bay, Alaska, and transporting it for sale in Anchorage, Alaska and Seattle, Washington. On April 26, 1979, NEFCO and Ball Bros. entered into a marketing agreement by which Ball Bros. granted NEFCO the exclusive right to "market as agent" for Ball Bros. fish acquired by Ball Bros. from Bristol Bay. NEFCO agreed to use its best efforts to maximize the quantity of fish delivered.
 
 
 5
 Under the agreement, Ball Bros. undertook to: (1) pay in advance all expenses of acquiring, preparing, storing, and delivering the fish; (2) deliver the fish to NEFCO free and clear of all liens, claims, encumbrances and security interests; (3) pay NEFCO, as marketing agent, a brokerage commission of 5% of the gross sales realized by NEFCO; (4) pay NEFCO's costs incurred in selling the fish to a buyer; (5) hold title to the fish until it was sold; (6) bear the risk of loss until the fish was sold to and accepted by NEFCO's buyer; (7) meet various specifications and standards originally established in the NEFCO-Okaya agreement; and (8) accept all responsibility for product defects before sale to and acceptance by NEFCO's buyer.
 
 
 6
 Appellees Transfresh, Cook Inlet, Seapro and Seapro-Alaska are custom fish processors who charge for processing and freezing fish at a specified rate per pound. Appellee Seafreeze is a cold storage company. Before the 1979 fishing season, Transfresh orally agreed to provide processing services for fish to be acquired by Ball Bros. On Approximately April 1, 1979, Cook Inlet agreed to custom process fish for Ball Bros. On approximately February 15, 1979 Seapro agreed to store, process, and freeze fish to be acquired by Ball Bros. during the 1979 season. Although Seafreeze did not process fish, the appellees have agreed to refer to Seafreeze and the four processor companies collectively as "the processors."
 
 
 7
 Pursuant to the several agreements among Okaya, NEFCO, Ball Bros. and the processors, the first shipment of salmon was acquired, processed, frozen and delivered to Okaya in July, 1979. Okaya, however, notified NEFCO that it refused to accept delivery because the fish did not meet Okaya's quality standards. Following inspection of the fish by representatives of Okaya, NEFCO, Ball Bros., and Seapro, the parties determined that some of the fish had been misgraded, that some were partly decomposed, and that some were otherwise defective.
 
 
 8
 On November 27, 1979, NEFCO and Okaya entered into a settlement and release agreement. Okaya rescinded the earlier purchase and sale agreement. In settlement of Okaya's claim to recover the purchase price, NEFCO agreed to pay Okaya $2,000,000, and to allow Okaya to retain the fish already delivered from Seattle to Japan. Okaya discharged NEFCO, Ball Bros., and the processors from all liability for breach of the purchase and sale agreement. NEFCO, however, reserved the right to bring claims against Ball Bros. and the processors.
 
 
 9
 Both NEFCO and Ball Bros. became debtors in bankruptcy proceedings under Title Eleven. In October 1980, NEFCO's trustee brought this action before the bankruptcy court to recover $2,000,000 from Ball Bros. and the processors for negligence and breach of a third-party beneficiary contract.
 
 
 10
 On December 23, 1982, all defendants except Ball Bros. moved for summary judgment. In responding to the summary judgment motions, NEFCO for the first time raised claims for equitable subrogation and equitable indemnity. On March 7, 1983, the bankruptcy court issued findings of fact and conclusions of law, and recommended that summary judgment be granted in favor of the defendant processors.
 
 
 11
 On April 25, 1983, the district court adopted the bankruptcy court's findings and conclusions, and issued orders granting summary judgment in favor of each of the processors.
 
 DISCUSSION
 
 12
 Our task in reviewing a summary judgment is "identical to that of the trial court." M/V American Queen v. San Diego Marine Const., 708 F.2d 1483, 1487 (9th Cir.1983). Viewing the evidence in the light most favorable to the party opposing the summary judgment, we must determine under a de novo standard whether there is no genuine issue of material fact, and whether the moving party was entitled to judgment as a matter of law. Id.; Heiniger v. City of Phoenix, 625 F.2d 842, 843 (9th Cir.1980).
 
 
 13
 De novo review is appropriate even though this action was filed before the bankruptcy court and the district court applied state law. We review bankruptcy court conclusions of law de novo. In re Dill, 731 F.2d 629, 631 (9th Cir.1984). We recently held that we need not accord special deference to a district judge's interpretation of the law of the state in which he sits. Our review is therefore de novo. Churchill v. F/V Fjord, 744 F.2d 677 (9th Cir.1984).
 
 
 14
 Washington law is applicable to the legal issues raised on summary judgment. When a bankruptcy court adjudicates a dispute arising from a contract claim, it must apply state law unless the bankruptcy code provides otherwise. Matter of Sparkman, 703 F.2d 1097, 1099 (9th Cir.1983). Sparkman implies that state law applies to other claims arising from the same transaction that served as the basis for the contract claim. Id. at 1100.
 
 
 15
 In deciding questions of state law, a bankruptcy court should apply the law that a court of the forum state would apply. See In re Cochise College Park, Inc., 703 F.2d 1339, 1348 n. 4 (9th Cir.1983); Kippen v. American Automatic Typewriter Co., 324 F.2d 742, 744 n. 4 (9th Cir.1963). Cf. Gilkey v. Andrew Weir Ins. Co., 291 F.2d 132, 135 (9th Cir.1961); Boeing Airplane Co. v. Brown, 291 F.2d 310, 313 (9th Cir.1961). A Washington court would have applied Washington law to each of NEFCO's claims because Washington has the most "significant contacts" with this controversy. Werner v. Werner, 84 Wash.2d 360, 526 P.2d 370 (1974). We therefore apply the law of Washington in deciding whether the processors were entitled to summary judgments.
 
 
 16
 * Negligence
 
 
 17
 The district court's summary dismissal of the negligence claim should be affirmed because NEFCO suffered no compensable injury.[1] NEFCO has alleged only economic losses, and such losses are generally not recoverable as between manufacturers or processors and persons other than purchasers or consumers in negligence actions.
 
 
 18
 Appellant's reliance on Berg v. General Motors Corp., 87 Wash.3d 584, 555 P.2d 818 (1976), and Nakanishi v. Foster, 64 Wash.2d 647, 393 P.2d 635 (1964) is misplaced. Berg, Nakanishi and the other cases relied upon by NEFCO deal with actions between consumers or purchasers and manufacturers or processors. We choose, under the circumstances of this case, not to extend Washington law in this area. Because NEFCO was neither a consumer nor a purchaser of the appellees' services, NEFCO cannot maintain a cause of action in negligence to recover solely economic losses.
 
 
 19
 Since NEFCO has not alleged a compensable injury, the district court properly granted a summary judgment dismissing NEFCO's negligence claim.
 
 II
 Third Party Beneficiary Contract
 
 20
 In order to maintain a claim for breach of third party beneficiary contracts, NEFCO must establish that the processors intended to assume direct obligations to NEFCO. Lonsdale v. Chesterfield, 99 Wash.2d 353, 361, 662 P.2d 385, 389 (1983). The subjective motive, purpose or desire of the contracting parties is not material. Id. 99 Wash.2d at 362, 662 P.2d at 390. The reviewing court should look to the contract terms to determine whether performance would "necessarily and directly benefit" the third party. Id.
 
 
 21
 NEFCO argues that the processors intended to benefit NEFCO, and that their intentions were evident from the fact that they were aware: (1) that Ball Bros. could not have marketed its fish without selling through a third party; and (2) that the fish were to be processed according to NEFCO's specifications. NEFCO's argument fails because it focuses upon the processors' subjective knowledge rather than upon their objectively verifiable intentions to assume direct obligations to NEFCO.
 
 
 22
 The processors' contracts with Ball Bros. did not mention NEFCO. By performing those contracts, the processors did not necessarily and directly benefit NEFCO. NEFCO did stand to benefit from Ball Bros.' agreement to let NEFCO sell the processed fish. However, the marketing agreement necessarily intervened before NEFCO was able to reap the benefits of the processors' labor. NEFCO was therefore not an intended beneficiary of the processing contracts, and the district court properly granted summary judgment dismissing NEFCO's third party beneficiary contract claim.III
 
 Equitable Subrogation
 
 23
 The Washington Supreme Court recently summarized the elements necessary to maintain an equitable subrogation claim: "The right to subrogation exists when a party, not a volunteer, pays another's obligation for which the subrogee has no primary liability in order to protect such subrogee's own rights and interests." Miller Casualty Ins. Co. v. Briggs, 100 Wash.2d 9, 13, 665 P.2d 887, 890 (1983). A right to subrogation exists only when the subrogee pays or discharges a debt for which another is primarily liable. One cannot seek subrogation for paying one's own debts. Livingston v. Shelton, 85 Wash.2d 615, 620, 537 P.2d 774, 777 (1975), cert. denied, 424 U.S. 958, 96 S.Ct. 1437, 47 L.Ed.2d 365 (1976).
 
 
 24
 NEFCO is not entitled to subrogation against any of the processors because it did not pay a debt or meet an obligation for which any of them was primarily liable.[2] Okaya possessed neither a contract nor a tort claim against the processors. Okaya could not have raised a warranty claim because it was not in privity of contract with the processors. See Berg, 87 Wash.2d at 591, 555 P.2d at 821. Okaya could not have raised a third party beneficiary contract claim because the processors did not intend to assume direct obligations to Okaya.
 
 
 25
 Okaya did not have a tort claim against the processors because it suffered no compensable injury. When the fish proved defective, Okaya exercised its contractual right to reject the delivery. Okaya therefore did not bear the loss caused by the decreased value of the defective fish. Although Okaya eventually accepted delivery, it did so pursuant to the $2,000,000 settlement with NEFCO. The loss fell upon NEFCO but did not cause injury to Okaya.[3]
 
 
 26
 Because NEFCO did not pay a debt for which the processors were primarily liable, an essential element of subrogation is lacking. Livingston, 85 Wash.2d at 619, 537 P.2d at 777. The district court therefore properly dismissed NEFCO's equitable subrogation claim on summary judgment.
 
 IV
 Equitable Indemnity
 
 27
 A party seeking to maintain an equitable indemnity claim must establish the presence of three elements: (1) injury to a party and the party's right to assert a cause of action against the defendant, Nelson v. Sponberg, 51 Wash.2d 371, 375, 318 P.2d 951, 954 (1957); (2) settlement of the injured party's claim by the plaintiff who was legally obligated to pay the claim, Cheney v. City of Mountlake Terrace, 20 Wash.App. 854, 862, 583 P.2d 1242, 1248 (1978); and (3) reasonableness of the amount paid in settlement. Id.
 
 
 28
 NEFCO's equitable indemnity claim must fail as a matter of law for the same reason that its equitable subrogation claim must fail: Okaya did not have a cause of action against the processors. The district court therefore properly dismissed Okaya's NEFCO's equitable indemnity claim.
 
 CONCLUSION
 
 29
 The court's dismissals of NEFCO's negligence claim, the third party beneficiary contract, equitable subrogation and equitable indemnity claims are affirmed.[4]
 
 
 30
 AFFIRMED.
 
 
 
 *
 Honorable Robert E. Coyle, United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The parties raised the issue of whether agency principles barred NEFCO from asserting a claim against the processors. Because we find that NEFCO suffered no compensable injury, we need not address the agency issue
 
 
 [2]
 NEFCO first raised its equitable subrogation and indemnity claims in its opposition to the motions for summary judgment. Although Fed.R.Civ.P. 15(a) requires litigants to seek leave of the court or consent of other parties before amending their pleadings, the district court did not abuse its discretion by addressing those claims on their merits. The court could properly have considered NEFCO's additional claims as a motion to amend its pleadings. See Inglis v. ITT Continental Baking Co., 668 F.2d 1014, 1053 n. 68 (9th Cir.1981). Amendments adding new claims are permissible under Rule 15, and may be considered "during the pendency of a motion for summary judgment." Id. The district court had discretion to grant leave to amend the pleadings as justice required, with the most important consideration being whether the other parties were prejudiced by the amendment. Id. The processors were not prejudiced here by the addition of the two claims
 
 
 [3]
 NEFCO argues that Okaya had a tort claim against the processors under Nakanishi v. Foster, 64 Wash.2d 647, 658, 393 P.2d 635, 642 (1964) (processor owes a duty of care to ultimate consumer), and under Sec. 62A-2.722 of the Revised Code of Washington (both buyer and seller can sue third party who damages sale goods). A right of action under each of these authorities is predicated upon the existence of some injury to the buyer. Because no such injury was suffered by Okaya, Nakanishi and R.C.W. Sec. 62A-2.722 do not provide authority giving Okaya a tort claim against the processors
 
 
 [4]
 NEFCO argues that the bankruptcy court abused its discretion by denying NEFCO's Fed.R.Civ.P. 56(f) motion to continue the summary judgment proceedings for further discovery. We see no reason to disturb the bankruptcy court's exercise of discretion. Further discovery by NEFCO would not affect the outcome because we affirm the dismissal of the contract, indemnity and subrogation claims based upon Washington law as applied to facts which NEFCO does not seek to controvert