In the Matter of Sidney GREENWALD d/b/a Maple Leaf Nursing Home, Debtor.

Jack FRIEDMAN, Plaintiff,

v.

LOCAL 144 NURSING HOME PENSION FUND, New York City Nursing Home—Local 144 Welfare Fund, et al., Defendants.

Bankruptcy No. 81 B 20401.
Adv. No. 86 Adv. 6015.

United States Bankruptcy Court, S.D. New York.

May 16, 1990.

See also, Bkrtcy., 107 B.R. 28.

Speno Goldman Goldberg Steingart & Penn, P.C., Mineola, N.Y., for plaintiff.

Karger & Tucker, New York City, for defendants.

### DECISION ON MOTION AND CROSS–MOTION FOR SUMMARY JUDGMENT OR DISMISSAL OF THE COMPLAINT

HOWARD SCHWARTZBERG, Bankruptcy Judge.

This is an adversary proceeding brought by Jack Friedman, a former partner of the debtor, Maple Leaf Nursing Home, against the defendants, collectively referred to as the "Funds", who are multi-employer employment benefit plans within the meaning of Section 3 of ERISA, 29 U.S.C. § 1002. Both sides seek summary judgment pursuant to F.R.C.P. 56(d) made applicable by Bankruptcy Rule 7056. The plaintiff paid a Confession of Judgment to the Funds in the sum of $362,374.22 with respect to an obligation originally incurred by the debtor, Maple Leaf Nursing Home, and seeks to be subrogated to the Funds' claim against the debtor to the extent of his payment.

### FACTUAL BACKGROUND

On July 1, 1981 an involuntary petition for Chapter 7 relief under the Bankruptcy Code was filed against the debtor, Sidney Greenwald d/b/a Maple Leaf Nursing Home. The case was subsequently converted by the debtor for reorganizational relief under Chapter 11 of the Bankruptcy Code and was thereafter reconverted to a Chapter 7 case.

Between October 15, 1976 and March 31, 1978, four judgments were entered in the New York Supreme Court, Rockland County, based on arbitration awards in favor of the Funds arising out of payment obligations under collective bargaining agreements between Maple Leaf Nursing Home with respect to the employees of the Nursing Home.

On January 1, 1978, plaintiff Friedman and his partner, Sidney Greenwald, agreed to dissolve their partnership in the Nursing Home, leaving Greenwald with complete ownership and control of the debtor. Thereafter, on December 5, 1978, Friedman signed a Confession of Judgment in favor of the Funds in the amount of $257,035.29. From December 6, 1978 to July 17, 1981,

the Funds took no formal action against Friedman to collect on the Confession of Judgment. During the same period, the debtor Nursing Home paid to the Funds approximately $91,723.29. On July 17, 1981, after the Nursing Home ceased making payments to the Funds, the Funds entered the Confession of Judgment in the New York Supreme Court, Rockland County. On June 11, 1984, Friedman paid the Confession of Judgment, together with interest, in the sum of $362,734.22.

In December of 1984, Friedman filed an action in the state court against the Funds, which was removed to the United States District Court for the Southern District of New York. The basic issue in the District Court action was whether or not Friedman was entitled to a credit for all payments made to the Funds by or on behalf of the Maple Leaf Nursing Home for periods after December 5, 1978, when Friedman executed his Confession of Judgment. Friedman sought a refund for all amounts paid by the debtor, Maple Leaf Nursing Home, for periods following the Confession of Judgment which he paid. It was Friedman's position that he was not to be the prime payor and that his obligation to the Funds was secondary to the debtor's primary obligation, so that any payments made by the debtor, Maple Leaf Nursing Home, should be in reduction of Friedman's obligation under his Confession of Judgment.

Both parties moved for summary judgment in the United States District Court for the Southern District of New York. In a decision dated September 19, 1988, District Court Judge Kenneth Conboy denied both motions for summary judgment on the ground that there was no evidence of any agreement whereby Friedman would be credited by the Funds for any payments made by Maple Leaf Nursing Home after the date of Friedman's Confession of Judgment. In arriving at this determination, Judge Conboy cited various authorities, including *Snide v. Larrow*, 62 N.Y.2d 633, 634, 476 N.Y.S.2d 112, 113, 464 N.E.2d 480, 481 (1984) ("The general rule is that the debtor may direct the application of his payments, but if he fails to do so, then the

creditor is permitted to apply the payments as he sees fit.")

After a bench trial, Judge Conboy ruled on December 30, 1988, that Friedman failed to sustain his burden of establishing that he was entitled to a credit for payments made by Maple Leaf Nursing Home to the Funds for periods after December 5, 1978, when Friedman issued his Confession of Judgment to the Funds.

## ARBITRATION AWARD

On April 4, 1981, more than three years after Friedman executed his Confession of Judgment, an arbitration award was made in a dispute between a nursing home owners' association, of which Maple Leaf Nursing Home was a member, known as the Greater New York Health Care Facilities Association ("Greater New York"), and the Funds. The arbitration award related to certain allowances that had been granted by New York State Department of Health to specific nursing homes who were members of Greater New York in order to assist and subsidize the operations of the nursing homes. The debtor, Maple Leaf Nursing Home, was entitled to receive approximately $500,000.00 under this arbitration award. However, the Commissioner of the New York State Department of Taxation and Finance has also asserted a claim to these funds, as well as the defendant unions in this case, referred to as the Funds. In May of 1982, this court ordered that the fund of approximately $500,000.00 be held in escrow by the New York State Department of Health ("the escrow fund"), subject to a determination by this court as to the respective rights of the claimants.

Friedman, as plaintiff in this adversary proceeding, has asserted against the Funds, as defendants, his right to be subrogated to all the defendants' rights in the escrow fund, as well as, the other sums which the Funds claim are due from the debtor, Maple Leaf Nursing Home, including periods after December 5, 1978, when Friedman executed his Confession of Judgment.

## THE FUNDS' PROOFS OF CLAIMS

The Funds filed with this court five proofs of claim. On February 1, 1982, the Funds filed a proof of claim against the debtor in the sum of $543,667.23, representing wage claims based upon an arbitration award dated July 31, 1982, for specifically named employees, covering the years 1980 and 1981. On October 29, 1982, the Funds filed four other proofs of claims: Claim # 33 by Local 144 Welfare Fund was for $333,064.55 with respect to collective bargaining agreement contributions due for the period April 1, 1979 through June 30, 1981. Claim # 34 by Local 144 Health Facilities Training and Upgrading Fund was for $25,501.16 regarding contributions due for the period April 1, 1979 through June 30, 1981. Claim # 35 by Local 144 Welfare Fund was for $44,680.72 covering contributions due from April 1, 1979 through June 30, 1981. Claim # 36 by Local 144 Nursing Home Pension Fund was for $148,099.83 for contributions due between April 1, 1979 and June 30, 1981. In their papers submitted with respect to the motions for summary judgment, the Funds assert that the actual unpaid claims total $574,744.75. Included in these claims are amounts due to employees of the debtor during the 180 days before the date of the cessation of the debtor's business on May 1, 1981, for which priority is claimed under 11 U.S.C. § 507(a)(4) in the amount of $67,390.64.

Plaintiff, Friedman, who was formerly a partner with Sidney Greenwald in the operation of the Maple Leaf Nursing Home claims the right to be subrogated to all of the claims asserted by the Funds in this bankruptcy proceeding to the extent of the $362,734.22 which he paid to the Funds under his Confession of Judgment dated December 8, 1978. The plaintiff also seeks to enjoin the Funds from settling the adversary proceeding with respect to the escrow funds which are also claimed by the New York State Department of Taxation and Finance.

In their answer to the complaint, the Funds asserted certain affirmative defenses to the effect that Friedman's payment of $362,374.22 on account of the indebtedness of Maple Leaf Nursing Home for the period prior to December 5, 1978 did not entitle him to be subrogated to the Funds' claims for debts due from the Maple Leaf Nursing Home after December 5, 1978 or to their right of priority under 11 U.S.C. § 507(a)(4).

In their amended answer, the Funds also urge that Judge Conboy's decision on December 30, 1988 acted as *res judicata* and collateral estoppel with respect to Friedman's subrogation claim and that subrogation is unavailable because the Funds have not been fully paid. The Funds also assert that Friedman's subrogation claim must be subordinated to their claims, pursuant to 11 U.S.C. § 509(c) until those claims are paid in full. The Funds further maintain that pursuant to 11 U.S.C. § 507(d) Friedman has no right to be subrogated to the right of priority under 11 U.S.C. § 507(a)(4).

Both parties allege that there is no genuine issue as to any material fact and that summary judgment is appropriate.

## DISCUSSION

### Subrogation as to Priority Claims

There is no question that 11 U.S.C. § 507(d) specifically denies an entity the right to be subrogated to a priority claim under 11 U.S.C. § 507(a)(4) in the following language:

(d) An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection (a)(3), (a)(4), (a)(5), or (a)(6) of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

However, there is a question of fact as to what portion of the Funds' filed proofs of claims relate specifically to unpaid employee contributions under 11 U.S.C. § 507(a)(4). Therefore, summary judgment is unavailable as to this issue.

### Subrogation in General

An entity who is liable with the debtor on a claim and pays that claim to a creditor is entitled to be subrogated to the creditor's claim against the debtor to the extent of their shared liability on that claim. This point is expressly stated in 11 U.S.C. § 509(a) as follows:

(a) Except as provided in subsection (b) or (c) of this section, an entity that is liable with the debtor on, or that has secured, a claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment.

Friedman and Greenwald shared a liability to the Funds for unpaid employee contributions owed by Maple Leaf Nursing Home during the period that Friedman served as a partner in Maple Leaf Nursing Home. Friedman asserts that he and Greenwald dissolved their partnership on January 1, 1978. Manifestly, Friedman does not admit to any personal liability as a partner for any period after December 5, 1978, when he executed a Confession of Judgment in favor of the Funds for his partnership obligations. Accordingly, Friedman does not claim that he shared any liability for the Maple Leaf Nursing Home obligations to the Funds for any of the Maple Leaf Nursing Home's debts to the Funds which arose after December 5, 1978.

Friedman's payment to the Funds of $362,374.22 was based on his primary obligation to the Funds arising out of his Confession of Judgment dated December 5, 1978. Until that date, Friedman shared a joint liability with Sidney Greenwald d/b/a Maple Leaf Nursing Home for the Nursing Home's obligations to the Funds. There has been no determination that Friedman was jointly liable for the Nursing Home's obligations to the Funds that accrued after December 5, 1978, nor does Friedman admit that he has any liability for the Nursing Home's post-December 5, 1978 obligations. Therefore, Friedman's payment of the Confession of Judgment did not include any shared obligation with Greenwald for periods after December 5, 1978 to which he might be entitled to a credit for his payment and with respect to which his payment might give rise to a right of subrogation. Indeed, Judge Conboy specifically ruled that Friedman was not entitled to a credit for payments made by Maple Leaf Nursing Home to the Funds for periods after December 5, 1978. *Friedman v. Ottley*, 85 CIV. 0345 (S.D.N.Y. Dec. 30, 1985).

As to the payment which Friedman did make to the Funds for the period up to December 5, 1978, it represented a satisfaction of Friedman's primary obligation under his Confession of Judgment in favor of the Funds. Although Friedman originally shared a joint obligation with Sidney Greenwald d/b/a Maple Leaf Nursing Home, his obligation to the Funds amounted to a primary responsibility after he executed the Confession of Judgment. Thus, his payment of $362,374.22 to the Funds satisfied his own primary obligation to the Funds and not simply a debt for which Sidney Greenwald d/b/a Maple Leaf Nursing Home was primarily liable.

"A right to subrogation exists only when the subrogee pays or discharges a debt for which another is liable. One cannot seek subrogation for paying one's own debts." *Rubenstein v. Ball Bros., Inc.,* (*In re New England Fish Company* ) 749 F.2d 1277 at 1282 (9th Cir.1984); *In re Tygrett,* 72 B.R. 129, 130 (Bankr.C.D.Ill.1987); *In re Smothers,* 60 B.R. 733, 735 (Bankr.W.D.Ky.1986).

Therefore, Friedman's payment of his primary liability under his Confession of Judgment does not give rise to any right to be subrogated to the Funds' claims against the debtor. Moreover, Friedman is in no position to claim that his payment reduced the Funds' claims against the debtor for the simple reason that the proofs of claims filed by the Funds reflect contributions due the Funds for the period from April 1, 1979 through June 30, 1981. These additional obligations, which allegedly accrued after the execution of Friedman's Confession of Judgment on December 5, 1978, and were not included as a shared liability for which he confessed judgment and paid, cannot qualify as a shared debt for which Friedman assumed liability. Conversely, the Funds may not receive a distribution for any obligation owed by the debtor for any period prior to December 5, 1978 because they do not claim any unpaid amounts for the earlier period for which Friedman made his payment.

In light of the foregoing, Friedman is not entitled to assert a right of subrogation for any debts owed by the debtor to the Funds which accrued after December 5, 1978.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B).

2. The Funds defendants are entitled to a summary judgment declaring that the plaintiff, Friedman, has no right to be subrogated under 11 U.S.C. § 509(a) to any part of the claims asserted by the Funds against the debtor, Sidney Greenwald d/b/a Maple Leaf Nursing Home, for the claimed obligations which arose after Friedman executed his Confession of Judgment on December 5, 1978 and which are asserted in the Funds' proofs of claims for the period commencing April 1, 1979.

3. The plaintiff's cross-motion for a summary judgment declaring that he is entitled to be subrogated to any portion of the Funds' proofs of claims for periods commencing April 1, 1979, and thereafter, is denied.

4. The plaintiff's cross-motion for a dismissal of the Funds' affirmative defenses is also denied.

5. The Funds' motion for a dismissal of Friedman's complaint is granted.

SETTLE ORDER on notice.