IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | No. 39183-3-III |
| THE HARLAN D. DOUGLASS TRUST. | ) | |
| | ) | |
| HARLEY C. DOUGLASS, an individual | ) | |
| and Residuary Beneficiary of the Harlan | ) | |
| D. Douglass Trust, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LANZCE G. DOUGLASS, individually | ) | |
| and as a Residuary Beneficiary of the | ) | |
| Harlan D. Douglas Trust, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| THOMAS HAMILTON, individually and | ) | |
| as Special Trustee of the Harlan D. | ) | |
| Douglas Trust, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| STACEY M. DOUGLASS BOIES, as a | ) | |
| Residuary Beneficiary of the Harlan D. | ) | |
| Douglass Trust, and as an additional | ) | |
| necessary party, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| and | ) | |
| | ) | |

No. 39183-3-III
*In re Harlan D. Douglass Trust*

| | |
|---|---|
| DEANNA MALCOM, as Attorney in Fact for HARLAN D. DOUGLASS, a Beneficiary of the Harlan D. Douglass Trust, and as an additional necessary party, | ) ) ) ) ) |
| Respondent. | ) ) ) |

BIRK, J. [1] — We review a preliminary injunction restraining Lanzce Douglass and Stacey Douglass Boies from using an April 2019 durable power of attorney (DPOA) making them co-attorneys-in-fact to manage the affairs of their father, Harlan Douglass. The superior court entered the preliminary injunction on the motion of Deanna Malcom, who holds a competing February 2019 DPOA to manage Harlan's affairs. [2] The issue arose in a proceeding initiated by Harlan's other son, Harley Douglass, who contended that in the summer of 2019 Lanzce wrongfully procured a deed transferring real property out of a trust established by the will of Harlan's late wife Maxine Douglass. Harley argued the deed was the product of undue influence, and, when the existence of the April 2019 DPOA was revealed, Malcom asserted that it, too, was the product of undue influence. The trial court entered the preliminary injunction against use of the April 2019 DPOA before trial over the validity of the deed. A commissioner of this court granted

---

[1] The Honorable Ian S. Birk is a Court of Appeals, Division One, judge sitting in Division Three pursuant to CAR 21(a).

[2] We refer to Douglass family members by their first names for clarity. No disrespect is intended.

2

discretionary review, ruling the trial court's neglect to waive or fix an appropriate bond

met the criteria of RAP 2.3(b)(1). We confine our review to this issue, we do not disturb

the continuing force of the preliminary injunction, and we remand for the trial court to

waive or fix an appropriate bond.

## I. Facts

On August 29, 2019, Harley filed an action against Lanzce, Thomas Hamilton as

the special trustee of the Harlan D. Douglass Trust, and unnamed Doe defendants. Harley

alleged Maxine's will established a trust to receive certain real property, and made her

three children residual beneficiaries. Under the trust, Harley was a 50 percent

beneficiary, Stacey was a 40 percent beneficiary, and Lanzce was a 10 percent

beneficiary. The trust made Harlan trustee, unless he was unwilling or unable to serve, in

which case Hamilton was named "Special Trustee." According to Harley's complaint,

"sometime in July or August of 2019, Lanzce . . . wrongfully caused, encouraged and

prevailed upon Mr. Hamilton to execute one or more deeds for the tortious purpose of

removing each and every asset from the Trust." On January 3, 2020, Harley filed a

petition under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A

RCW, naming Lanzce and Hamilton as respondents and making generally similar

allegations.

On August 3, 2022, Malcom filed a motion for a preliminary injunction in her capacity as attorney-in-fact for Harlan. Malcom was designated Harlan's attorney-in-fact in a February 2019 DPOA.[3] According to the motion and its supporting papers, on August 2, 2022, counsel for Lanzce sent a letter invoking the April 2019 DPOA, which purportedly took effect "'upon the disability or incapacity of the principal,'" revoked "'any other powers of attorney which the principal may have previously executed,'" and named Lanzce and Stacey co-attorneys-in-fact. The letter asserted that the April 2019 DPOA was triggered when Harlan's treating physician testified he was not able to manage his affairs. The letter included a delegation by Stacey giving Lanzce authority to "fulfill all power, duty, and authority" conferred to the nominated attorneys-in-fact. The August 2, 2022 letter requested a meeting "on Thursday, August 4 at 9:00 a.m. to meet with you regarding pending matters and the overall operations" of Harlan's business affairs. In the motion, Malcom asserted the letter was received "merely three court days before commencement of trial" of the claims in Harley's August 2019 complaint and January 2020 TEDRA petition. Malcom asserted the request that Malcom "transfer all authority to Lanzce" was "a litigation strategy to hamper Harlan's ability to protect

---

[3] It is apparent from the captions of the trial court documents that Malcom as Harlan's attorney-in-fact and Stacey became joined as necessary parties in the trial court proceedings.

4

himself at trial." The motion argued the April 2019 DPOA was either "an outright

forgery," or "otherwise a product of undue influence by Lanzce" and "not a reflection of

Harlan's true intent." (Emphasis omitted.)

Malcom attested to further background information in her declaration supporting

the motion. She stated Harlan executed the February 2019 DPOA naming her as

attorney-in-fact, but at Harlan's direction she did not take any action until starting in

August 2019. She asserted that, also at Harlan's direction, as Harlan's attorney-in-fact

she advised Lanzce and Stacey that general powers of attorney that they held were

revoked. Malcom then began managing Harlan's affairs. Malcom denied knowledge of

the April 2019 DPOA naming Lanzce and Stacey co-attorneys-in-fact in case of Harlan's

disability until her counsel received the August 2, 2022 letter invoking it. Malcom

described events in March 2019, in which Lanzce was allegedly involved, in which

Harlan declined to sign a different DPOA, signed the general power of attorney naming

Lanzce and Stacey that was later revoked, signed a will, and then signed a subsequent will

after his lawyer learned of changes to the first will. According to Malcom, Lanzce

presented Harlan documents to sign in California outside the presence of his attorney and

then later took Harlan in a private plane in April 2019 to meet with a new attorney in the

Seattle area. Malcom's narrative suggests the conclusion that the April 2019 DPOA was

procured by undue influence after Harlan declined to sign a substantially similar DPOA in

March 2019. Malcom filed an amended motion for preliminary injunction on August 4, 2022.

Lanzce opposed the motion. Lanzce argued Malcom presented "an overly complicated and colorful" version of events. Lanzce gave a different account of Harlan's signing certain power of attorney documents in 2019, including meeting with Lanzce and Stacey in California and attending a meeting with Lanzce, attorney Mike Turnbull, and others in Tacoma. Lanzce claimed he and Stacey were blocked from visiting or speaking with Harlan once Malcom began using the February 2019 DPOA. He asserted the April 2019 DPOA was triggered when Harlan's treating physician, Sameh Elsanadi, MD, gave testimony in a deposition on April 22, 2022 meeting its definition of incapacity. At that point, Lanzce argued, "steps were immediately taken to secure Harlan's property and affairs." Lanzce argued (1) Malcom failed to meet the necessary burden of proof for a preliminary injunction, (2) the invocation of the April 2019 DPOA was not a trial tactic and the DPOA was not a product of fraud or undue influence, and (3) if the superior court granted injunctive relief, it would be required to set a bond. Stacey filed a joinder in Lanzce's response to the motion for preliminary injunction.

Lanzce supported his opposition to the motion with a declaration attesting to his view of the circumstances of the documents Harlan signed in 2019. Lanzce testified, "Following Dr. Elsanadi's deposition, I realized that the April 2019 [DPOA] was

6

effective." He further testified that Harlan had expressed his "wishes that I not disclose its existence until he was incapacitated." Lanzce testified that he believed certain estate planning actions should be taken with respect to Harlan's estate. Lanzce also supported his opposition with a declaration of Mike Turnbull, an estate planning attorney. Turnbull testified that Harlan attended a meeting at his office with him, Lanzce and others on April 22, 2019 and "seemed like a normal guy with full capacity." Turnbull stated, "I had no concerns about [Harlan's] understanding what he was doing, or whether he was clear in his desire to do so. Harlan did not seem lacking or deficient or incapacitated in any way." Turnbull stated he did not have reason to believe Lanzce or Stacey were pressuring or forcing Harlan into doing anything he did not already wish to do. Lanzce also submitted a declaration by a certified public accountant who attended the meeting and likewise denied concerns about Harlan's capacity to make decisions.

On September 12, 2022, the superior court entered its order granting the preliminary injunction. The court found there was a "well-grounded fear of invasion of Harlan's right to determine his own attorney-in-fact where a legitimate dispute currently exists as to whether the April 2019 DPOA appointing Lanzce and Stacey Douglass as co-attorneys in fact or the February 2019 DPOA appointing Deanna Malcom is the DPOA that should remain in full force and effect." The court stated, "[T]he validity of the competing power of attorney document[s] needs to be adjudicated," and there was

7

sufficient question concerning the procurement of the April 2019 DPOA to enjoin its use "until such time a final determination on the validity of the document can be made." The order did not address either waiving or fixing a bond. Lanzce and Stacey filed a notice for discretionary review. A commissioner of this court granted their motion for discretionary review, concluding "the trial court's failure to order a bond" met the criteria for discretionary review pursuant to RAP 2.3(b)(1).

We grant Malcom's motion to supplement the record with the superior court's June 5, 2023 findings of fact, conclusions of law and judgment. The superior court found that on August 14, 2019, Hamilton signed a deed in his capacity as special trustee of the Harlan D. Douglass Trust, which purported to convey 224 Spokane County properties out of the trust to Harlan individually. The superior court concluded the deed "does not have effect and is set aside, based on lack of acceptance and undue influence." The superior court concluded the deed came about because Lanzce "engineered a situation whereby he could inherit a great deal more than was natural or planned by Harlan."

## II. Analysis

Before turning to the preliminary injunction, we note that we asked the parties to submit briefs on whether the superior court's entry of its June 5, 2023 findings of fact, conclusions of law, and judgment mooted our review of the preliminary injunction. Both parties argued that our review is not moot. Lanzce and Stacey argued the superior court's

decision "did not address, dissolve, or alter" the preliminary injunction. Accordingly, they say, the preliminary injunction "remains undisturbed." They observe the superior court's decision notes that the subject of Lanzce's power of attorney remains pending. Similarly, Malcom argued "there is an outstanding issue that the trial court has yet to resolve," which is "whether Harlan properly revoked the April 2019 DPOA which nominated Lanzce to act as his attorney-in-fact." Like Lanzce and Stacey, Malcom also argues "the preliminary injunction is still in effect." We also take judicial notice that the superior court's June 5, 2023 decision is subject to a notice of appeal which has been transmitted to this court. Because the parties agree that the preliminary injunction remains in effect and remains subject to future proceedings, we agree with the parties that review is not moot.

We next consider the scope of this discretionary review. We review the grant or denial of a preliminary injunction for abuse of discretion. San Juan County v. No New Gas Tax, 160 Wn.2d 141, 153, 157 P.3d 831 (2007). Lanzce contends Malcom did not show a clear legal or equitable right, a likelihood of succeeding on the merits, a well-grounded fear of immediate invasion, or actual and substantial injury. However, the commissioner did not grant discretionary review on any of those issues, and did not conclude that any of those issues entrusted to the trial court's discretion met the standard for discretionary review of "obvious" or "probable" error under RAP 2.3(b)(1) or (2).

9

Rather, the commissioner granted review under RAP 2.3(b)(1) solely on the basis that the failure of the preliminary injunction to waive or set a bond was "obvious error" under RAP 2.3(b)(1), based on authority holding a bond is "mandatory." Evar, Inc. v. Kurbitz, 77 Wn.2d 948, 951, 468 P.2d 677 (1970). Neither party obtained modification of the commissioner's ruling.

In State v. LG Electronics, Inc., we granted discretionary review on two questions certified by the trial court under RAP 2.3(b)(4). 185 Wn. App. 123, 130, 340 P.3d 915 (2014), aff'd, 186 Wn.2d 1, 375 P.3d 636 (2016). We recognized two ways in which this court possesses discretion to determine the scope of discretionary review. First, the court has discretion to limit the scope of review on an issue on which review has been allowed. Id. at 130 n.12 ("The formulation of this second question could be construed as an invitation to consider whether RCW 4.16.160 exempts the Attorney General's claim for actual damages pursuant to RCW 19.86.090 from the four-year limitation period set forth in RCW 19.86.120. To the extent that this invitation was, in fact, extended, we decline to accept it."). Second, the court has discretion to decline to reach issues on which review was not granted. We explained,

> "This court determines the scope of discretionary review." Emily Lane
> Homeowners Ass'n v. Colonial Dev., LLC, 139 Wn. App. 315, 318,
> 160 P.3d 1073 (2007), aff'd in part, rev'd in part sub nom., Chadwick
> Farms Owners Ass'n v. FHC, LLC, 166 Wn.2d 178, 207 P.3d 1251 (2009);
> RAP 2.3(e). While RAP 2.3(e) vests discretion in appellate courts to

> delimit the scope of discretionary review, we have been indisposed to consider issues for which discretionary review was not granted. <u>See</u> <u>Johnson</u>[ v. Recreational Equip., Inc.], 159 Wn. App. [969,] 959 n.7, 247 P.3d 18 [2011] ("Because discretionary review was not granted on this issue, we will not reach it."); <u>see also</u> <u>City of Bothell v. Barnhart</u>, 156 Wn. App. 531, 538 n.2, 234 P.3d 264 (2010) ("We granted review on a single, narrow issue. Accordingly, we decline to address other issues for which discretionary review was not granted."), <u>aff'd</u>, 172 Wn.2d 223, 257 P.3d 648 (2011): <u>cf.</u> <u>Lunsford v. Saberhagen Holdings, Inc.</u>, 139 Wn. App. 334, 338, 160 P.3d 1089 (2007) ("[I]f an issue raised for the first time on appeal is 'arguably related' to issues raised in the trial court, a court may exercise its discretion to consider newly-articulated theories for the first time on appeal."), <u>aff'd</u>, 166 Wn.2d 264, 208 P.3d 1092 (2009).

<u>LG Elecs.</u>, 185 Wn. App. at 151-52 (last alteration in original).

While we recognize that Lanzce and Stacey sought discretionary review on the entirety of Malcom's showing to obtain the preliminary injunction, the commissioner found only one issue that met this court's standards for discretionary review. The trial court's subsequent 43-page decision speaks to the extensive evidence bearing on the merits of Malcom's claims that is not before us on this record. This raises the concern that "'it would be imprudent for us to address those complex issues'" on a record that is incomplete and one on which the substance of Malcom's claims was largely vindicated after trial in the superior court. <u>Id.</u>, at 152 (quoting <u>Barnhart</u>, 156 Wn. App. at 538 n.2). We exercise our discretion to limit our review to the issue of the bond.

RCW 7.40.080 states,

No injunction or restraining order shall be granted until the party asking it shall enter into a bond, in such a sum as shall be fixed by the court or judge granting the order, with surety to the satisfaction of the clerk of the superior court, to the adverse party affected thereby, conditioned to pay all damages and costs which may accrue by reason of the injunction or restraining order. The sureties shall, if required by the clerk, justify as provided by law, and until they so justify, the clerk shall be responsible for their sufficiency. The court in its sound discretion may waive the required bond in situations in which a person's health or life would be jeopardized.

This requires a party obtaining a preliminary injunction "to deposit an amount deemed by the court sufficient to secure the interests of the adverse party." Bowcutt v. Delta N. Star Corp., 95 Wn. App. 311, 320, 976 P.2d 643 (1999) (citing RCW 7.40.080).

Lanzce argues "an injunction without the required bond is invalid." Lanzce bases this argument on Evar, which held that under RCW 7.40.080 "posting a bond is mandatory" and because the trial court there had not fixed a bond supporting the order appealed, the order was "invalid." 77 Wn.2d at 951. But Lanzce's argument does not consider the complete context of the Evar decision. That case arose out of several proceedings in Yakima county "to determine the ownership of stock, and management, and control of several closely held corporations." Id. at 948. Following a hearing on November 19, 1968, the court entered an order on December 24, 1968 which directed the restrained party "to surrender and deliver certain property" to the plaintiff. Id. at 950. The Supreme Court concluded it was "apparent" that the motions presented

12

on November 19, 1968 "were for the purpose of preserving the status quo and to temporarily freeze the assets involved pendente lite until all issues presented by the pleadings could be heard upon the merits." Id. Later, following a claim that the restrained party was in contempt of the December 24, 1968 order, the trial court on March 21, 1969 entered a new order enjoining the restrained party from voting certain corporate stock and directing that he immediately transfer certain stock to the plaintiff. Id. It was the later, March 1969 order that the Supreme Court declared "invalid" for lack of bond. Id. at 950-51. We find this significant, because nothing indicates that by reversing that order, the court disturbed the trial court's original order entered "for the purpose of preserving the status quo." Id. at 950.

Evar relied on Irwin v. Estes, 77 Wn.2d 285, 461 P.2d 875 (1969). In Irwin, plaintiffs sought to enjoin a proposed "Sky River Rock Festival and Lighter Than Air Fair" from taking place in Thurston County. Id. at 285. On August 28, 1969, the superior court entered an order temporarily enjoining the event, providing the injunction would not be effective until deposit of a $25,000 bond. Id. at 285-86. The next day, the Supreme Court held a hearing on a writ of certiorari, at which it was stipulated that the plaintiffs would not post the required bond. Id. at 286. As a result, the Supreme Court "entered an order which left the parties in exactly the same position as though there had been no injunction," because it was apparent in the absence of the plaintiffs posting bond "there

13

was not and would not be a valid injunction." Id. Evar also relied on Western Academy of Beaux Arts v. De Bit, 101 Wash. 42, 171 P. 1036 (1918). There, plaintiff secured a temporary restraining order against a continuing trespass upon land, which the court held was error and invalid without the required bond. Id. at 43-44, 45. And Lanzce further cites Cheney v. City of Mountlake Terrace, 20 Wn. App. 854, 857, 583 P.2d 1242 (1978). Citing Irwin, Cheney states "it is error to grant the injunction without the required bond," 20 Wn. App. at 857, but otherwise Cheney is not on point because in that case the trial court had fixed a bond and the appeal concerned the amount of damages recoverable by the restrained party after a temporary restraining order was dissolved. Id. at 856-57.

In the present case, we believe the preliminary injunction was, like the original order in Evar, intended by the trial court to preserve the status quo until there could be a determination on the merits of the validity of the April 2019 DPOA that Lanzce and Stacey sought to invoke. Evar, Irwin, Western Academy, and Cheney all generally support the proposition that it is error under RCW 7.40.080 to issue a preliminary injunction without waiving or fixing a bond. But, when their context is considered, these decisions do not support the proposition that a preliminary injunction is always without effect, as opposed to only subject to correction, when a required bond is omitted. At the same time, we do not agree with Malcom's argument that we can assume the superior

court waived bond as permitted by RCW 7.40.080 "in situations in which a person's health or life would be jeopardized," where Malcom points to nothing in the record supporting that the court made such a decision.

We do not disturb the continuing force of the preliminary injunction, and we remand for the trial court to waive or fix an appropriate bond. We deny the parties' respective requests for attorney fees.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Birk, J.

WE CONCUR:

_____         _____
Fearing, C.J.                            Lawrence-Berrey, J.

15