**In re F.A. POTTS & CO., INC., Debtor.**

**Bankruptcy No. 81–03639T.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 14, 1989.

Earl T. Stamm, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for debtor.

Gary M. Schildhorn, Adelman, Lavine, Gold and Levin, Philadelphia, Pa., for creditors' committee.

Teresa K. Deisinger, Duane, Morris & Heckscher, Philadelphia, Pa., for European American Bank.

OPINION

THOMAS M. TWARDOWSKI, Chief Judge.

Before the court is a motion filed by the Creditors' Committee to determine the claim held by European American Bank ("EAB") under 11 U.S.C. §§ 506 and 509, or in the alternative, to subordinate EAB's claim under 11 U.S.C. § 510(c)(1). After reviewing the evidence, we conclude that EAB does not hold a claim against the bankruptcy estate since the obligors on the indebtedness owed to EAB were Midland Bank ("Midland") and Ransomes and Rapier ("R & R"), who fully satisfied the obligation to EAB. As such, Midland had no right of subrogation to assign to EAB. Furthermore, we conclude that even if EAB held a claim against the estate, equity would require that it be subordinated under 11 U.S.C. § 510(c)(1) to the claims of unsecured creditors. A brief recitation of the relevant facts follows.

Prior to debtor's bankruptcy filing, R & R constructed a dragline to sell to a prospective customer, who later cancelled its order. Debtor expressed interest in purchasing the dragline, and Midland and R & R requested that EAB finance the transaction.[1] Thereafter, debtor entered into a credit agreement with EAB, executed a note payable to EAB in the principal amount of $12,000,000.00 and posted collateral.[2] Midland and R & R executed documents which were referred to as "guarantees" under which Midland and R & R agreed to assume liability for the indebtedness of debtor to EAB. Long after debtor defaulted on its payments to EAB, EAB received full payment on the indebtedness from Midland and R & R and, pursuant to its settlement agreement with Midland, EAB received an assignment of any subrogation rights which Midland may have had against debtor.

EAB maintains that it has a claim against the estate based upon the assign-

---

1. At the time of the transaction, Midland was R & R's banker and also owned a 20% interest in EAB.

2. The actual principal amount of credit extended by EAB to debtor was $11,039,647.00.

ment of Midland's subrogation rights. The Creditors' Committee argues that EAB does not have a claim against the estate because Midland, as the true obligor on the indebtedness owed to EAB, had no subrogation rights which it could assign. We agree with the argument advanced by the Creditors' Committee.

A review of the record reveals that after debtor expressed an interest in purchasing the dragline, Midland and R & R, not debtor, requested that EAB finance the transaction. EAB did not investigate debtor's financial background or the collateral which debtor proposed to post. Instead, EAB demanded that Midland and R & R assume liability for the indebtedness. Although the documents executed by Midland and R & R are referred to as "guarantees," a close inspection of the documents reveals ambiguities and inconsistencies. The R & R "guarantee" states that R & R is the "primary obligor" of the indebtedness and refers to debtor not as "borrower," but as "buyer." Moreover, the R & R "guarantee" requires that EAB demand payment first from Midland before it can attempt to hold R & R liable for the indebtedness. Furthermore, the Midland "guarantee" contains a statement that EAB is not relying on the "financial undertaking" of debtor and neither "guarantee" requires that EAB first demand payment from debtor before it can hold Midland or R & R liable for the indebtedness. Finally, an EAB internal memoranda [3] describes this transaction as export financing for R & R and further states that EAB would "make the loan but that we [EAB] had not, and could not in the time available, make any analysis of the borrower and so we [EAB] would be relying totally on the Midland Bank guarantee." (Exhibit M6).

Given these circumstances, we find that the true obligors of the indebtedness owed to EAB were Midland and R & R, who fully satisfied the indebtedness owed to EAB. As such, EAB has no direct claim against the estate and Midland had no subrogation rights which it could assign to EAB. *See,*

*Rubenstein v. Ball Bros., Inc. (In re New England Fish Company),* 749 F.2d 1277 (9th Cir.1984).

▪ Furthermore, we conclude that even if EAB held a claim against the estate, equity would require that it be subordinated to the claims of unsecured creditors under 11 U.S.C. § 510(c)(1). To establish entitlement to equitable subordination under § 510(c)(1), the movant must establish that: (1) the claimant engaged in inequitable conduct; (2) the misconduct resulted in injury to other creditors or conferred an unfair advantage upon the claimant; and (3) equitable subordination is not inconsistent with other provisions of the Bankruptcy Code. *Benjamin v. Diamond (In re Mobile Steel Co.),* 563 F.2d 692 (5th Cir.1977); *In re W.L. Bradley Company, Inc.,* 75 B.R. 505 (Bankr.E.D.Pa.1987). Furthermore, some courts have concluded that equitable subordination is appropriate even though the claimant did not engage in inequitable conduct, if the claim itself is of a status susceptible to subordination. *In re Merwede,* 84 B.R. 11 (Bankr.D.Conn. 1988).

Instantly, we find that subordination would be required because EAB engaged in inequitable conduct by attempting to hide the true nature of the loan in question to obtain a double recovery on its investment. This conduct clearly would result in injury to other creditors and confer an unfair advantage upon EAB because if EAB's claim was allowed, EAB would receive a double recovery at the expense of the unsecured creditors. Finally, subordination of EAB's claim would not be inconsistent with other provisions of the Bankruptcy Code. Moreover, given the fact that allowance of EAB's claim would result in a double recovery to EAB at the expense of the unsecured creditors, we find that EAB's claim is of a status susceptible to subordination. For these reasons, we conclude that equity would require subordination of EAB's claim.

An appropriate order will follow.

*Aetna Business Credit,* 619 F.2d 1001 (3rd Cir. 1980).

---

3. Due to the ambiguity of the loan documents, parol evidence is admissible to aid the court in interpreting them. *See, Mellon Bank, N.A. v.*

61

## ORDER

AND NOW, this 14th day of December, 1989, upon consideration of the motion filed by the Creditors' Committee to determine the claim held by European American Bank ("EAB") under 11 U.S.C. §§ 506 and 509, or in the alternative, to subordinate the claim of EAB to the claim of unsecured creditors under 11 U.S.C. § 510(c)(1), it is

ORDERED that: (1) EAB does not hold a claim against the estate; and (2) even if EAB held a claim against the estate, equity would require that it be subordinated to the claims of unsecured creditors under 11 U.S.C. § 510(c)(1).