**In re F.A. POTTS & CO., INC.**

**Civ. A. No. 90–0498.**

United States District Court,
E.D. Pennsylvania.

June 1, 1990.

Duane, Morris & Heckscher, Teresa K. Deisinger, Philadelphia, Pa., for appellant.

Gary M. Schildhorn, Adelman, Lavine, Gold & Levin, Philadelphia, Pa., for Creditors Committee.

Earl T. Stamm, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for debtor.

## MEMORANDUM

GILES, District Judge.

This is an appeal from the December 14, 1989 order of the bankruptcy court. 108 B.R. 59. European American Bank (EAB) filed a proof of claim (claim) against the debtors' estate in the amount of $15,700,- 818. The bankruptcy court held that EAB had no claim. EAB timely appealed that finding. Jurisdiction to hear an appeal from a bankruptcy court's final judgment is found in 28 U.S.C. § 158.

## FACTUAL AND PROCEDURAL BACKGROUND

Debtors, GMP Land Co. and F.A. Potts Co., Inc. (Potts), are corporations in the business of mining and selling coal. Debtors entered into a contract with a Belgian company, which required debtors to supply the Belgian entity with 120,000–180,000 tons of coal per year for ten years. Debtors valued the contract at $250,000,000.

To perform under the terms of the contract, debtors purchased from Ransome and Rapier (R & R) a "dragline", a large, expensive machine used in strip mining operations. Debtors needed the machine to increase rapidly production requirements demanded by its lucrative contract with the Belgian company. The dragline cost $11,- 039,647, which debtors could not pay without financing. Midland Bank (Midland) assisted R & R in making the sale by obtaining the financing the debtors required.

EAB agreed to lend debtors the money they required with Midland and R & R guaranteeing the obligation. The debtors defaulted on their first interest payment due March 31, 1981 and filed a voluntary chapter 11 bankruptcy action on September 11, 1981. On January 10, 1983 EAB filed a proof of claim in the amount of $15,700,- 818. When the bankruptcy petition was filed, the debtor owed $12,653,000, the principal of the underlying loan and interest accrued to the date of filing of the claim.

Until early 1987, Midland and R & R had not paid the amount due under the guarantees. However, in January of 1987 Midland, R & R and EAB entered into settlement agreements. At that time, the debt, including interest, totalled over $23,000,- 000, according to EAB. Midland agreed to pay $21,000,000 and assign its interest in the bankrupt estate to EAB. R & R paid EAB $515,585.77 in settlement of its guarantee obligations.

The bankruptcy court held that Midland and R & R were the primary obligors under the loan agreement with EAB and that the obligors fully satisfied their obligation to EAB. Therefore, EAB had no claim against the estate and Midland had no right of subrogation which it could assign to EAB. It based this finding on the following facts:

1. Midland and R & R, not debtors, requested that EAB finance the transaction.

2. EAB did not investigate debtors' financial background or the collateral that debtor proposed to post.

3. EAB demanded that Midland and R & R assume liability for the indebtedness.

4. The "guarantee" agreements between Midland, R & R and EAB, although so termed, created primary liability in R & R and stated that EAB did not rely on the financial undertaking of the debtors.

In effect the bankruptcy court found that the guarantee, as well as the conduct of the parties, created debtor status for Midland and R & R, as opposed to guarantor status. Alternatively, the bankruptcy court held that if EAB had a claim, subordination was required because EAB engaged in inequitable conduct when it hid the true nature of the loan.

On appeal EAB concedes that its settlement agreements with Midland and R & R extinguish its direct claims against debtors. However, it argues that it has a right to subrogation based on Midland's assignment. The value of this assignment allegedly would be $12,653,000. The Official Committee of Unsecured Creditors (the Committee), whose brief debtors join, argues that $2,407,444.28 of the $23,000,000 owed to EAB represent interest on interest, which debtors never agreed to pay. Because EAB has already received repayment of the principal amount of the debt, pre and post-petition interest at the default rate, fees, costs and expenses, and interest thereon, they argue that EAB would receive a double recovery if it recovered from the estate.

The questions presented on appeal are:

1. Whether the bankruptcy court erroneously found that EAB had no claim against the estate; and

2. Whether the bankruptcy court erroneously found that EAB's conduct had been inequitable and whether the court erred as a matter of law in finding that the claim would be subordinated, assuming that conduct existed.

## LEGAL STANDARD

The district court's review of questions of law is plenary in a bankruptcy appeal. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–03 (3d Cir.1981). However, when an appeal presents a mixed question of law and fact the factual determinations by the bankruptcy court are unassailable by the reviewing district court, unless the findings are clearly erroneous. Fed.R.Civ.P. 52(a). *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364 at 394, 68 S.Ct. 525 at 541, 92 L.Ed. 746 (1948). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 394, 68 S.Ct. at 541.

If the trial court's factual determination is supported by the record, then the district court must analyze the legal aspects of the findings to determine whether the findings were legally sufficient. *Universal Minerals*, 669 F.2d at 102, *citing Smith v. Harris*, 644 F.2d 985 at 990 n. 1 (3d Cir.1981) (Aldisert, J., concurring).

Interpretation of an ambiguous contract is a question of fact. *STV Engineers, Inc. v. Greiner Engineering, Inc.*, 861 F.2d 784, 787 (3d Cir.1988). However, the court must first determine whether the contract was ambiguous as a matter of law. *STV Engineers, Inc.*, 861 F.2d at 787; *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 101 (3d Cir.1986); *Mellon Bank v. Aetna Business Credit Corp.*, 619 F.2d 1001, 1011 (3d Cir.1980).

## EAB'S CLAIM AGAINST THE ESTATE

The bankruptcy court found that while the agreements executed by R & R

and Midland were termed "guarantees", they were ambiguous and inconsistent. However, before evaluating the guarantee agreement, this court must address the obligations created by the loan instruments; the credit agreement and the promissory note.

Neither the credit agreement nor the promissory note is ambiguous and the bankruptcy court's ruling must be reversed. The credit agreement plainly states that EAB agrees to make loans to GMP and that GMP's obligation to repay the loan is evidenced in the promissory note. It also states that in the event of continuing default the principal and interest shall become immediately due and payable without declaration or notice to GMP. This agreement was executed by GMP and EAB.

Furthermore, the promissory note clearly states that, "for value received, GMP Land Company, Inc. . . . hereby promises to pay to the order of [EAB] . . . the sum of twelve million dollars." Together, the credit agreement and the promissory note create a debtor-creditor relationship between GMP and EAB. These two documents were both executed on April 15, 1980 and are contemporaneous documents. Therefore, this court must find, as a matter of law, that the liability of the debtor was unambiguously created by these loan instruments.

■ The bankruptcy court interpreted Midland's guarantee agreement, after determining that it was ambiguous. This court must first determine whether the guarantee was in fact ambiguous. Midland's guarantee states that Midland would pay the debt without contestation upon default of the borrower, debtors, and after EAB exercised its rights against any security it may hold.

■ A guarantee, by definition, is a debt payable by one party when another defaults and an attempt has been made to collect the debt of another. *Atlanta Corp. v. Ohio Val. Provision Co.*, 489 Pa. 389, 394, 414 A.2d 123 (1980). The language of the guarantee is that Midland would pay EAB amounts due "in the event of default

by the borrower . . . and following the realization by [EAB] of such security that may have been available to [it]." Midland's obligation is that of a guarantor. (Trial Exh R–1). Therefore, the agreement between Midland and EAB unambiguously creates Midland's secondary liability. Stated another way, it makes Midland a guarantor.

The Committee asks the court to read the Midland guarantee agreement with that of R & R. It argues that the R & R document is ambiguous because it states that R & R is primarily liable for the debt and then states that EAB cannot proceed against R & R unless Midland bank shall have no obligation to it and/or that EAB demanded that Midland pay the obligation.

■ Because Midland's agreement with EAB is unambiguous, this court need not evaluate R & R's agreement. Assuming that the Midland agreement is ambiguous, the Committee still cannot prevail. R & R's agreement seems ambiguous because while it states that R & R is a primary obligor it requires that EAB seek payment from Midland before R & R's obligation becomes due. Thus, R & R is not primarily liable for the debt. This guarantee agreement may use terms incorrectly, but the responsibilities and obligations of the parties unambiguously create a guarantee relationship.

The same reasoning applies to the Midland guarantee. Midland's agreement with EAB created secondary liability of Midland in the event of debtors' default. (Trial Exh M–3). A guaranty, according to Black's Law Dictionary, is "a collateral agreement for performance of another's undertaking." (5th ed. 1979). The document's scheme creates this type of secondary liability. Additionally, GMP and EAB executed a loan agreement under which GMP had to pay Midland's and R & R's guarantee fees. (Loan Agreement at p. 13).

The Committee urges that a court must conduct a factual hearing to determine whether the terms of an agreement are ambiguous. It cited *Mellon Bank*, 619 F.2d 1001, for that proposition. Here, the parties do not dispute the meaning of a

particular word, but differ over the legal import of the obligations created by the instruments. An evidentiary hearing may be warranted when a *"reasonable* alternative interpretation is suggested." *Id.* at 1011. No reasonable alternative interpretation exists in this case. The loan instruments create debtors' liability for repayment and the guarantee agreement specifically requires the bank to repay the loan only in the event of the debtors' default.

■ Moreover, the guarantee agreements are not contemporaneous with the loan instruments in that the obligations are between different parties. Debtors had an obligation to pay back the loan to EAB pursuant to the credit agreement and promissory note. However, Midland had an obligation to pay the debt only in the event that debtors did not pay it. The guarantee and the credit agreements gave EAB a choice of whom it would proceed against in the event of default. It could first seek payment from GMP or it could collect payment from Midland, who could then proceed against GMP. However, this option does not make Midland a primary obligor.

Even if the bankruptcy court correctly deemed the guarantees ambiguous, the facts it cited to find primary liability in Midland are either unsupported by the record or are legally insufficient to support the conclusion. In determining the relationships that the parties to the agreements intended to create the bankruptcy court examined the intent of the parties, which is a factual determination. *Landtect Corp. v. State Mutual Life Assurance Co.,* 605 F.2d 75, 79 (3d Cir.1979). Thus, the bankruptcy court's determination of intent would be subject to the clearly erroneous standard.

EAB contends that the bankruptcy court's factual finding that EAB did not investigate debtors' financial condition is clearly erroneous. EAB cites the testimony of Karl Goos, President of GMP and Potts (N.T. 153), to support its argument, as well as a memorandum on EAB letterhead regarding Pott's financial condition (Trial Exh. R–1). Mr. Goos admitted that the debtors provided EAB with business plans and future projections of the debtors. Additionally, the EAB memorandum discussed the nature of debtors' businesses and projections for the future. However, the bankruptcy court based its finding on EAB's own admission that EAB did not have time to do, and did not perform, in fact, a thorough financial analysis of the debtor. Therefore, the bankruptcy court's finding that EAB conducted no financial analysis cannot be said to have been clearly erroneous.

That EAB had and evaluated information regarding debtors' financial future would not answer the question of what obligations were created by the loan instruments. All the circumstances must be evaluated to determine whether the bankruptcy court correctly characterized the documents and conduct of the parties as creating primary liability in Midland. The loan instruments support no such finding.

■ That R & R and Midland requested that EAB provide the financing for the sale does not legally create primary liability. A guarantor may not be a debtor, even if goods are sold to a principal debtor at the request of the guarantor. *See* Williston on Contracts 1:22.

Additionally, the bankruptcy court found that R & R and Midland were primarily liable for the loan because EAB acknowledged the arrangement as export financing for R & R (Trial Exh M–6) and because R & R arranged the EAB financing. (Goos N.T. 149). However, in view of the plain language of the credit agreement and promissory note executed by debtors, guarantor liability of other entities does not alter the primary obligation of debtors. This statement is not sufficient to overcome the obligations mandated by the documents.

The court cannot ignore the debtors' obligation as created by the loan instruments. These instruments are not susceptible to other interpretations and, therefore, are not ambiguous, nor must this court conduct an evidentiary hearing.

## EQUITABLE SUBORDINATION AND SUBROGATION

■ As an alternative, the bankruptcy court found that if EAB had a claim against the estate it was subject to subordination due to EAB's inequitable attempts to gain a double recovery. Whether a claim is properly subordinated pursuant to 11 U.S.C. § 510 is one of law. Therefore, the district court's review is plenary. *Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 101–03 (3d Cir.1981).

Traditionally, courts have looked for the following circumstances in exercising the power of equitable subordination; 1) whether the claimant has engaged in some type of inequitable conduct, 2) whether the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and 3) whether equitable subordination of the claim is inconsistent with the provisions of the bankruptcy code. *In re Ludwig*, 46 B.R. 125 (Bankr.E.D.Pa.1985), *In re Americana Apparel, Inc.*, 55 B.R. 160 (Bankr.E.D.Pa.1985).

The bankruptcy court determined that EAB "knew" that it did not have a claim as a subrogee. Because, as this court has ruled, the agreement was a guarantee, EAB cannot have engaged in inequitable conduct by pressing a claim as subrogee to a guarantor. Especially, when debtors and the unsecured creditors' committee concede that Midland's assignment of its rights is legal and thereby enforceable.

■ The question that remains is whether EAB could be subrogated to rights Midland may have. Section 509 provides:

"(a) ... an entity that is liable with the debtor on, or that has secured as claim of a creditor against the debtor, and that pays such claim, is subrogated to the rights of such creditor to the extent of such payment."

The plain language of the statute shows that Midland, as an entity liable with the debtor to EAB, has a right to repayment of money it paid in satisfaction of debtors' obligation to EAB. Midland would, therefore, be subrogated to the rights of EAB as the creditor, to the extent it paid EAB.

However, Midland has chosen to assign its rights of subrogation to EAB. EAB, standing in Midland's shoes, now has Midland's right of subrogation.

EAB would have a direct claim against the estate for any amounts due and owing under the loan agreement that Midland did not pay. However, EAB and Midland have agreed that EAB may pursue Midland's rights. The Committee argues that EAB would receive a double recovery if allowed to pursue Midland's rights because it has already received $21,000,000. However, this fact cannot invoke the doctrine of equitable subordination.

The unsecured creditors are not worse off as a result of the assignment. The estate owes EAB over $12,000,000 which it has not paid. The estate will not pay twice to EAB, the principal and interest on the loan. It will simply repay once the debt it owes. In fact, Midland had a legal right to seek $21,000,000 from the estate, which it assigned to EAB. EAB is seeking significantly less than it might be entitled to request. This court is not in a position to evaluate the negotiations between Midland and EAB. Midland traded a right to seek the amounts it paid under the guarantee from the estate to extinguish $2,000,000 owed to EAB. It is inappropriate for this court to refuse to enforce a legal assignment because Midland may have contracted for a loss.

The Committee and the Debtors argue that $2,407,444.28 of the $23,523,963.58 that EAB stated was due and payable represented interest on interest. Assuming this fact to be true, it is not dispositive by any logic. The difference in these amounts, which might otherwise be demanded, far exceeds the $12,000,000 claimed. Therefore, the order of the bankruptcy court must be reversed.

An appropriate order follows.

## ORDER

AND NOW, this 1st day of June, 1990, it is hereby ORDERED that the bankruptcy court's order of December 14, 1989 disallowing European American Bank's (EAB)

proof of claim, is REVERSED. EAB is hereby allowed a proof of claim in the amount $12,653,000.