Wayne J. PERRY d/b/a/ Wayne
J. Perry Photographic
Design, Plaintiff,

v.

SONIC GRAPHIC SYSTEMS, INC., and
Bradley Konia, and Network Analysis
Group, Inc. of the Commonwealth of
Pennsylvania, Defendants.

No. CIV.A. 98–2084.

United States District Court,
E.D. Pennsylvania.

April 11, 2000.

Bart D. Cohen, Berger & Montague, P.C., Philadelphia, PA, for Plaintiff.

Sigmund Fleck, Reger & Rizzo, King of Prussia, PA, David Dunn, Allentown, PA, for Defendants.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Plaintiff, Wayne J. Perry has sued defendants Sonic Graphics Systems, Inc. ("Sonic"), Bradley Konia, and Network Analysis Group, Inc. ("NAG"), alleging four counts: (i) copyright infringement by Sonic and Mr. Konia; (ii) breach of contract by Sonic; (iii) copyright infringement by NAG; and (iv) contributory infringement by Sonic. This Court has original jurisdiction over Plaintiff's copyright claims under 28 U.S.C. § 1331, and supplementary jurisdiction over Plaintiff's state claim claims under 28 U.S.C. § 1367(a). Presently before the Court is Plaintiff's Motion for Summary Judgment On All Counts. For the following reasons, Plaintiff's Motion is granted in part and denied in part.

## BACKGROUND

Plaintiff, Wayne J. Perry, is a professional photographer. On January 9, 1995, Mr. Perry and Defendant Bradley Konia, acting on behalf of Defendant Sonic, signed a Licensing Agreement, which granted Sonic the right to use a set of photographs taken by Mr. Perry as follows: "[o]ne time non-exclusive use of the images listed below for up to 2,000 copies of the 1995 Sonic Graphic Systems' capability/pricing brochure in the original first edition's six (6) page layout within a 12 month period of this license/invoice date for local distribution only." *See* Plaintiff's Memorandum, Ex. 4. The Licensing Agreement further stated that "[n]o alterations may be made in these provisions without the express written consent of the Photographer." *Id.* The photographs in question have all been registered with the United States Copyright Office.

On February 17, 1995, the parties both signed another agreement stating that the parties had agreed to substitute another of Plaintiff's photographs for one listed in the original Agreement. This document concluded with "[n]o alterations may be made in these provisions without the express written consent of the Photographer. The TERMS and CONDITIONS on the reverse side of License/Invoice # 1448; January 9, 1995 apply unless specifically stated otherwise above." Plaintiff's Memorandum, Ex. 5.

During the course of 1995, Plaintiff discovered that Sonic was distributing its brochure containing its photographs to areas such as Oregon and Kentucky. *See* Plaintiff's Memorandum, Ex. 10. Further, Plaintiff found his photographs posted on Sonic's web site. *See Id.* at Ex. 11. Sonic also used at least one of Plaintiff's images for a large poster-sized print in its waiting room. *See Id.* at Ex. 13 (stating "[o]ther than the poster prints in our waiting room, there have been no additional uses of the images.").

Plaintiff complained to Defendants that these uses constituted copyright infringe-

ment, thus setting off an argument between Plaintiff and Defendant Bradley Konia, the President of Sonic. Mr. Konia protested to Plaintiff that although he signed the Licensing Agreement, he did not believe that Plaintiff intended to enforce it. In a letter to Plaintiff, Mr. Konia wrote on Sonic letterhead: "It never occurred to me that you would want to be compensated for the use of your images. Sure, that's the way you earn your living, but we did so much for you that I thought our relationship had transcended a strictly business relationship." Plaintiff's Memorandum Ex. 12.

Plaintiff subsequently filed suit against Defendants, alleging four counts: copyright infringement by Sonic and Mr. Konia (Count I), breach of contact by Sonic (Count II), Copyright Infringement by NAG (Count III), and contributory infringement by Sonic (Count IV). Defendant Sonic has also filed a Motion to Dismiss, which is concurrently denied by a separate order of this Court.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether any factual issues exist to be tried. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (citing *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505). Rather, we will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.,* 909 F.2d 1524, 1531 (3d Cir.1990) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

### II. Plaintiff's Copyright Infringement Claim Against Sonic (Count I)

A claim for copyright infringement has two elements: (1) that the Plaintiff owned the copyrighted material; and (2) that the Defendant infringed on at least one of the five exclusive rights set out in 17 U.S.C. § 106. *See Ford Motor Co. v. Summit Motor Prods.,* 930 F.2d 277, 290–91 (3d. Cir.1991). Plaintiff has submitted Certificates of Registration from the U.S. Copyright Office concerning the pictures at issue in this case. The Third Circuit has held that such Certificates "constitute *prima facie* evidence of the validity and ownership of the material." *Id.* at 291. Defendant's Response to Plaintiff's Motion for Summary Judgment does not address the validity of Plaintiff's Certificates of Registration, nor does it in any way address the issue of Plaintiff's ownership of the photographs at issue in this case. Accordingly there is no genuine issue of material fact as to whether Plaintiff owned the photographs at issue in this case, and the Court determines that Plaintiff did own the photographs at issue in this case.

The exclusive rights granted to a copyright holder are set out in 17 U.S.C. § 106, which states in part:

§ 106. Exclusive rights in copyrighted works

Subject to sections 106 through 120, the owner of a copyright under this title

has the exclusive rights to do and to authorized any of the following:

1. to reproduce the copyrighted work in copies or phonorecords ...

2. to prepare derivative works based upon the copyrighted work;

3. to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending....

17 U.S.C. § 106. Plaintiff has presented evidence that Sonic used his photographs in its brochures, in a large-sized poster, and on its web site. Sonic's use of Plaintiff's photographs, if unauthorized, would thus infringe the exclusive rights listed in 17 U.S.C. § 106(1) and (3). Plaintiff argues that the only authority granted to Sonic to use its photographs was contained in the Licensing Agreement of January 9, 1995. Sonic argues that Plaintiff gave "implied permission for the uses complained of." Defendants' Response at 6. In the alternative, Sonic argues that the determination of this case requires resolution of ambiguities in the licensing agreement, which are issues of fact that should be left to the jury, and that therefore summary judgment is inappropriate at this time.

A. *The Licensing Agreement Does Not Contain Ambiguities that Justify the Admission of Parol Evidence or Preclude Summary Judgment.*

■ Sonic argues that the Licensing Agreement must be considered in the context of Plaintiff's conduct and the nature of the relationship between the parties. This is parol evidence, and is only admissible here if the contract is ambiguous. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1010 n. 9 (3d Cir.1980). The best description of Pennsylvania's parol evidence rule comes from the Supreme Court of Pennsylvania, in a case that was cited approvingly by the Third Circuit in *Mellon Bank:*

> The rule enunciated in *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791 (1924), is firmly embedded in the law of Pennsylvania and from that rule we will not permit a deviation for it is essential that the integrity of written contracts be maintained.... Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.... [U]nless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence.

*United Ref. Co. v. Jenkins,* 410 Pa. 126, 134, 189 A.2d 574 (1963) (emphasis and citations omitted). *See Mellon Bank* at 1010. "When a written contract is clear and unequivocal, its meaning must be determined by its contents alone." *Id.* (citation omitted).

■ Sonic argues that there are two ambiguities in the Licensing Agreement, that could allow parol evidence to be considered in this case. First, Sonic argues that the phrase "local distribution" is ambiguous. Plaintiff has submitted evidence that Sonic used his photographs in brochures that were distributed as far away as Oregon. *See* Plaintiff's Memorandum, Ex. 10. Sonic has not responded to this evidence nor has it denied Plaintiff's allegation. Although the word "local" is indeed undefined, it is unreasonable to suggest that the phrase "local distribution" was intended to refer to the entire United States, as it would have to if it were to encompass both Pennsylvania and Oregon.[1] Under Pennsylvania law, when a party argues that a contract contains an

---

1. Indeed, although it is not evidence that the Court will consider in making its determination, Mr. Konia appeared to have an understanding of the phrase "local distribution" that was significantly more narrow than the one put forward by Defendants in response to Plaintiff's Summary Judgment Motion. In a letter to Plaintiff written on Sonic's letterhead, Mr. Konia stated: "[d]istribution is generally local, unless an out-of-state customer specifically requests information." Plaintiff's Memorandum, Ex. 13.

ambiguity, that party must be able to point to a reasonable alternative interpretation for the ambiguity. *See Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1012 n. 13 (3d Cir.1980) (stating that "if no 'reasonable' alternative meanings are put forth, then the writing will be enforced as the judge reads it on its 'face'."); *Hutchison v. Sunbeam Coal Corp.,* 513 Pa. 192, 201, 519 A.2d 385 (1986) (stating that "[a] contract is ambiguous if it is *reasonably* susceptible of different constructions and capable of being understood in more than one sense.") (emphasis added). The Court is not required to entertain unreasonable interpretations of potentially ambiguous contract terms. *See, e.g., In re F.A. Potts & Co.,* 115 B.R. 66, 69–70 (E.D.Pa.1990) (Giles, J.) (holding that "[a]n evidentiary hearing may be warranted where a '*reasonable* alternative interpretation is suggested'... [n]o reasonable alternative interpretation exists in this case.") (emphasis in original). As the Court finds Sonic's proposed interpretation to be unreasonable, and as the Court cannot find any reasonable interpretation of the phrase "local distribution" that would embrace areas as far away from Pennsylvania as Oregon, the Court does not find that this phrase opens the door to the admission of parol evidence.

■ Sonic also argues that the phrase "original first edition six page layout" is ambiguous, because "[t]he brochure in question was a *four* page layout, and the terms 'original first edition' were not defined within the body of the agreement." Defendant's Response at 3. The Court

finds the phrase "original first edition" to be clear, and Sonic does not elaborate on its confusion regarding this phrase.[2] Further, the Court does not find any reasonable ambiguity concerning the phrase "six page layout," which clearly referred to the brochure that Sonic distributed.[3] Sonic does not propose an alternative to the interpretation that this phrase refers to the brochure containing Plaintiff's photographs that Sonic distributed. Since "no reasonable alternative meanings [have been] put forth," the Court does not find the phrase in question to be an ambiguity that opens the door to the admission of parol evidence. *Mellon Bank, N.A.,* supra at 1012 n. 13.

■ Thus, the Court does not find any ambiguities in the Licensing Agreement warranting the introduction of parol evidence, and so the Court cannot consider Sonic's arguments regarding Plaintiff's conduct and the nature of the relationship between the parties. Sonic's second argument is that summary judgment is inappropriate because ambiguities in the Licensing Agreement must be resolved by a jury. For the reasons discussed above, the Court does not agree with Sonic that such ambiguities exist in the Licensing Agreement.

*B. Sonic's Use of Plaintiff's Images Exceeded the Scope of the Licensing Agreement.*

■ The Licensing Agreement states, in part, that it grants to Sonic a "[o]ne time non-exclusive use of the images ... for up

---

**2.** Sonic may note that its Response to Plaintiff's Motion for Summary Judgment is, in general, a bit light. The Court is all for brevity, but in this case Plaintiff's Motion for Summary Judgment makes out a prima facie case of copyright infringement. Sonic responded with a six page Memorandum in which the "Argument" section is less than one page. The problem is not the Response's brevity, but rather its failure to make arguments necessary to oppose Plaintiff's Motion.

**3.** Although it is not evidence that the Court will consider because it has found the phrase

in question to not be ambiguous, it is worth nothing that Mr. Konia, acting as Sonic's agent, clearly believed that the Licensing Agreement referred to the brochures it sent out, when he wrote in a letter to Plaintiff: "Unless we reach an agreement with you by January 9, we will cease distributing brochures using your images at that time.... You have a choice. You can totally screw us over and make a powerful and highly vocal enemy, or you can give us a break by extending the license agreement to at least give us time to get a new brochure together." Plaintiff's Memorandum Ex. 12.

to 2,000 copies of the 1995 Sonic Graphics Systems' layout within a 12 month period of this license/invoice date for local distribution only." Plaintiff's Memorandum, Ex. 4. Plaintiff has submitted evidence that Sonic printed more than 2,000 copies of its brochure containing Plaintiff's photographs. *See Id.* at Ex. 13 (Sonic admitting that "[w]e printed an additional 2,000 brochures in December of 1995."). Plaintiff has also submitted evidence that his images were used on Sonic's web site for approximately three months. *See Id.* (Sonic admitting that "[y]our images ·were available for a brief period of time (approx 3 months, from October to December) at http://www.fastcolor.com."). Plaintiff has submitted further evidence that one of his photographs was used by Sonic to create a large print displayed in Sonic's waiting room. *See Id.* (Sonic stating that "[o]ther than the poster prints in our waiting room, there have been no additional uses of the images."). All of these uses exceed the limited license granted by the Licensing Agreement. Sonic's Response, in turn, does not deny any of these uses. Accordingly, the Court finds that Sonic use of Plaintiff's photographs exceeded the scope of the Licensing Agreement.

### C. Sonic's Use of Plaintiff's Images Violated Plaintiff's Exclusive Rights under 17 U.S.C. § 106.

Plaintiff's exclusive rights for his images are set out at 17 U.S.C. § 106, which states in part:

§ 106. Exclusive rights in copyrighted works

Subject to sections 106 through 120, the owner of a copyright under this title has the exclusive rights to do and to authorized any of the following:

1. to reproduce the copyrighted work in copies or phonorecords . ·.·.

2. to prepare derivative works based upon the copyrighted work;

3. to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of own-

ership, or by rental, lease, or lending. . . .

17 U.S.C. § 106.

Plaintiff has shown that Sonic used his photographs in brochures that exceeded the authorization of the Licensing Agreement. This violates Plaintiff's exclusive rights under 17 U.S.C. § 106(1)-(3). Plaintiff has also shown that Sonic used his photographs in a large-sized poster displayed in Sonic's waiting room, which was not authorized by the Licensing Agreement. This violates Plaintiff's exclusive rights under 17 U.S.C. § 106(1) and (2). Plaintiff has additionally shown that Sonic used his photographs on its web site, which was not authorized by the Licensing Agreement. This violates Plaintiff's exclusive rights under 17 U.S.C. § 106(1)-(3).

### D. Conclusion.

As the Licensing Agreement is not ambiguous, and as parol evidence should not be considered in interpretin'g the Licensing Agreement, the Licensing Agreement will be read on its face. Sonic's use of Plaintiff's images exceeded the scope of the Licensing Agreement, and thus was unauthorized. Sonic's use infringed on Plaintiff's exclusive rights set out under 17 U.S.C. § 106, and therefore Plaintiff is entitled to summary judgment on his copyright infringement claim against Sonic.

### III. Plaintiff's Copyright Infringement Claim Against Bradley Konia (Count I)

Plaintiff's Motion for Summary Judgment does not address his copyright infringement claim against Bradley Konia. He discusses no evidence supporting his claim. Further, there are important legal issues relating to Plaintiff's ability to recover on this claim that are not discussed in Plaintiff's Memorandum. Plaintiff's Complaint states that Mr. Konia is liable, in part, because he "benefitted financially [from the infringement] by virtue of his ownership of Sonic stock." Complaint at ¶ 36. This raises the issue of whether the

corporate veil should be pierced in this case, which Plaintiff has not briefed at all. *See In re Blatstein,* 192 F.3d 88, 100 (3d Cir.1999) (stating that "Pennsylvania law ... recognizes a strong presumption against piercing the corporate veil."). Therefore summary judgment cannot be entered on this claim.

### IV. Plaintiff's Breach of Contract Claim Against Sonic (Count II)

 Under Pennsylvania law, a breach of contract claim requires Plaintiff to prove four elements: (1) the existence of the contract to which plaintiff and defendant were parties; (2) the essential terms of the contract; (3) a breach of the duty imposed by the contract; and (4) that damages resulted from the breach. *See Caplan v. Fellheimer,* 5 F.Supp.2d. 299, 302–03 (E.D.Pa.1998). Plaintiff's Memorandum presents evidence that it has satisfied each element of a breach of contract claim, and Sonic's Response addresses only one issue: whether the Licensing Agreement contained ambiguities. The Court has rejected those arguments above. Sonic has presented no other arguments relating to the validity of the Licensing Agreement, the terms of that agreement as read on its face, and whether it breached the Licensing Agreement as read on its face. The Court determines that the Licensing Agreement was a valid contract, and that Sonic breached the clear terms of that contract. Provided that Plaintiff can prove the existence of damages, he will prevail on his breach of contract claim.

### V. Plaintiff's Copyright Infringement Claim Against NAG (Count III)

 As discussed above, a copyright infringement claim has two elements: (1) that the Plaintiff owned the copyrighted material; and (2) that the Defendant infringed on at least one of the five exclusive rights set out in 17 U.S.C. § 106. *See Ford Motor Co.,* 930 F.2d at 290–91 (3d. Cir.1991). Plaintiff has proven ownership of the images in question. *See supra* at § II. Plaintiff appears to relate to the use of his images in designing Sonic's web site,

which could constitute an infringement on several of the exclusive rights set out in 17 U.S.C. § 106, including the right to prepare derivative works based on the copyrighted work, and the right to distribute copes of the copyrighted work. However, Plaintiff's Memorandum does not clearly brief this issue. NAG operates Webmart, which is a "virtual mall" on which Sonic's web site was stored. *See* Plaintiff's Memorandum at 7. Plaintiff seems to state that Kevin Justice of the Red Hot Media Stuff advertising agency actually designed the web site, and delivered the finished copy to NAG, but Plaintiff does not identify the relationship between Mr. Justice and NAG. Accordingly, it is unclear if NAG is in a position to be liable for copyright infringement, because NAG's role in the alleged infringement is unclear. For example, 17 U.S.C. § 512(c)(1) may apply, which with certain limitations, provides that "[a] service provider shall not be liable ... for infringement of copyright by reason of the storage at the direction of a user of material that resides on a system or network controlled or operated by or for the service provider...." 17 U.S.C. § 512(c)(1). The Court therefore cannot rule on this claim at the summary judgment stage.

### VI. Plaintiff's Contributory Infringement Claim Against Sonic (Count IV)

Because the Court cannot determine at the summary judgment stage whether NAG is liable for copyright infringement, the Court similarly cannot determine whether Sonic is liable as a contributory infringer for NAG's infringement.

### CONCLUSION

The Licensing Agreement does not contain ambiguities preventing summary judgment in this case. Further, the Licensing Agreement contains no ambiguities justifying the admission of parol evidence. There is no genuine issue of material fact as to whether Sonic violat-

ed the Licensing Agreement, as read on its face. Plaintiff has proven that he owned the images in question in this case, and that Sonic used those images in violation of Plaintiff's exclusive rights under 17 U.S.C. § 106. Accordingly, Sonic is liable for copyright infringement. The amount of damages however, cannot be determined at the summary judgment stage. Plaintiff has not sufficiently briefed the issue of statutory damages, and actual damages are an issue of fact that must be decided by a jury. Accordingly, a trial will be held to determine the amount of damages.

Plaintiff has not at all briefed his copyright infringement claim against Bradley Konia. Summary judgment on this claim is denied.

Plaintiff has also proven all of the elements of his breach of contract claim against Sonic, except for damages. Plaintiff will therefore be granted summary judgment on the claim, with the issue of damages to be determined at the above-mentioned trial.

Finally, Plaintiff has not satisfied the standard for summary judgment on his copyright infringement claim against NAG, nor for his claim that Sonic contributed to NAG's infringement. Summary judgment is denied on those claims.

An appropriate Order follows.

### ORDER

AND NOW, this __ day of April, 2000, upon consideration of Plaintiff's Motion for Summary Judgment On All Counts (Document No. 22), and the responses of the parties thereto, and in accordance with the foregoing Memorandum, it is hereby ORDERED that the Motion is GRANTED in part and DENIED in part, as follows:

1. Summary Judgment is GRANTED in favor of Plaintiff against Defendant Sonic Graphics Systems, Inc. for copyright infringement (Count I), and for breach of contract (Count II). A trial will be held to determine the amount of damages for both claims.

2. Summary Judgment is DENIED on Count I against Defendant Bradley Konia.

3. Summary judgment is DENIED on Counts III and IV.